RECORD NUMBER: 14-1837

# 𝕬nited 𝕾tates 𝕮ourt of 𝕬ppeals
### *for the*
# 𝕱ourth 𝕮ircuit

_____

AUTO-OWNERS INSURANCE COMPANY,

Appellant,

-v-

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA - FLORENCE DIVISION

==========================
Joint Appendix
==========================

John L. McCants, Esq.
District Court I.D. 4870
Rogers Lewis Jackson Mann & Quinn, LLC
P.O. Box 11803 (29211)
1330 Lady Street, Suite 400
Columbia, SC 29201
Tele: 803- 978-2834
Fax: 803-252-3653
jmccants@rogerslewis.com
Attorney for Appellant

Jeffrey J. Wiseman, Esq.
Young Clement Rivers, LLP
PO Box 993
Charleston, SC 29402
Tele: 803-720-5488
Fax: 843-579-1369
jwiseman@ycrlaw.com
Attorney for Appellee

-and-

Stephen L. Brown, Esq.
Young Clement Rivers, LLP
PO Box 993
Charleston, SC 29402
Tele: 803-720-5488
Fax: 843-579-1369
sbrown@ycrlaw.com
Attorney for Appellee

-and-

Russell G. Hines, Esq.
Young Clement Rivers, LLP
PO Box 993
Charleston, SC 29402
Tele: 803-720-5488
Fax: 843-579-1369
rhines@ycrlaw.com
Attorney for Appellee

# TABLE OF CONTENTS

U.S. District Court Civil Docket Report …………..………………..    1

Amended Complaint; C/A No. 4:12-cv-03423-RBH
…………….…………………………………………………......    9

Exhibit A to Amended Complaint: State of South Carolina, County
of Horry Second Amended Complaint; C/A No. 11-CP-26-05465
………………………………………………………………    20

Exhibit B to Amended Complaint: State of South Carolina, County
of Horry Consent Order of Dismissal Without Prejudice; C/A No.
11-CP-26-05465
……………………….………………………………………    30

Exhibit C to Amended Complaint: Travelers Insurance Policy
……………………………………………………….............    34

Exhibit D to Amended Complaint: Auto-Owners Insurance Policy
………………………………………………………………    57

DE 51-1 Exhibit A: Affidavit of Attorneys' Fees and Costs/Expenses
……………………………………………………………….    154

Order Granting Summary Judgment…………………………………    158

Summary Judgment………………………………………………….    174

Notice of Appeal…………………………………………………….    176

U.S. District Court Civil Docket Report

For Case #: 4:12-cv-03423-RBH

# U.S. District Court
## District of South Carolina (Florence)
## CIVIL DOCKET FOR CASE #: 4:12-cv-03423-RBH

Auto-Owners Insurance Company v. Travelers Casualty and
Surety Company of America
Assigned to: Honorable R Bryan Harwell
Case in other court: 4CCA, 14-01837
Cause: 28:2201 Declaratory Judgment (Insurance)

Date Filed: 12/03/2012
Date Terminated: 07/22/2014
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**Auto-Owners Insurance Company**            represented by    **Amanda R Maybank**
Maybank Law Firm
PO Box 12579
Charleston, SC 29422
843-766-8101
Fax: 843-766-8103
Email: amanda@maybanklaw.com
*TERMINATED: 12/02/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Lucius McCants**
Rogers Lewis Jackson Mann and Quinn
1330 Lady Street
Suite 400
Columbia, SC 29201
803-978-2826
Email: jmccants@rogerslewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roy Pearce Maybank**
Maybank Law Firm
PO Box 12579
Charleston, SC 29422
843-766-8101
Email: roy@maybanklaw.com
*TERMINATED: 12/02/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Travelers Casualty and Surety**            represented by    **Jeffrey James Wiseman**

2

**Company of America**

Young Clement Rivers
PO Box 993
Charleston, SC 29402
843-720-5488
Fax: 843-579-1393
Email: jwiseman@ycrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen L Brown**
Young Clement Rivers and Tisdale
PO Box 993
Charleston, SC 29402
843-577-4000
Fax: 843-579-1351
Email: sbrown@ycrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/03/2012 | 1 | COMPLAINT against Travelers Casualty and Surety Company of America ( Filing fee $ 350 receipt number 0420-4438588.), filed by Auto-Owners Insurance Company. (Attachments: # 1 Exhibit A - Assignment Letters, # 2 Exhibit B - Schuler Complaint, # 3 Exhibit C - Travelers Policy, # 4 Exhibit D - Auto-Owners Policy)(prou, ) (Entered: 12/04/2012) |
| 12/03/2012 | 3 | Local Rule 26.01 Answers to Interrogatories with jury demand by Auto-Owners Insurance Company.(prou, ) (Entered: 12/04/2012) |
| 12/04/2012 | 4 | Summons Issued as to Travelers Casualty and Surety Company of America. (prou, ) (Entered: 12/04/2012) |
| 01/10/2013 | 5 | Case Reassigned to Judge Honorable Mary G Lewis. Judge Honorable Terry L Wooten no longer assigned to the case. (suro, ) (Entered: 01/10/2013) |
| 01/16/2013 | 7 | SUMMONS Returned Executed by Auto-Owners Insurance Company. (Attachments: # 1 Exhibit Letter from SC Dept. of Insurance)(Maybank, Amanda) Modified on 1/18/2013; modified filing date to that of original filing (hcic, ). (Main Document 7 replaced on 1/18/2013 with corrected document as provided by filer) (hcic) (Entered: 01/18/2013) |
| 01/16/2013 | 8 | DELETION OF DOCKET ENTRY NUMBER 6. Reason: Document was not signed by filing attorney and was filed using an incorrect event. Corrected Filing Document Number 7 . Modified filing date to that of original filing: 1/16/2013. (hcic, ) (Entered: 01/18/2013) |
| 01/28/2013 | 10 | ANSWER to 1 Complaint, by Travelers Casualty and Surety Company of America. (Wiseman, Jeffrey) (Entered: 01/28/2013) |
| 01/28/2013 | 11 | Local Rule 26.01 Answers to Interrogatories by Travelers Casualty and Surety Company of America.(Wiseman, Jeffrey) (Entered: 01/28/2013) |

| | | |
|---|---|---|
| 01/29/2013 | 13 | **CONFERENCE AND SCHEDULING ORDER: Rule 26(f) Conference Deadline 2/19/2013, 26(a) Initial Disclosures due by 3/5/2013, Rule 26 Report due by 3/5/2013, Motions to Amend Pleadings due by 4/1/2013, Plaintiffs ID of Expert Witness due by 4/29/2013, Defendants ID of Expert Witnesses Due by 5/29/2013, Records Custodian Affidavit due by 5/29/2013, Discovery due by 7/29/2013, Motion in Limine due by 10/15/2013, Motions due by 8/12/2013, Rule 26(a)(3) Disclosures due by 10/28/2013, Jury Selection Deadline 11/5/2013, Mediation Due by 10/11/2013. Parties shall furnish the Court pretrial briefs seven (7) days prior to the date set for jury selection. Signed by Honorable Mary G Lewis on 1/29/2013. (prou, )** (Entered: 01/29/2013) |
| 01/29/2013 | 14 | **MEDIATION ORDER: Mediation Due by 10/11/2013, Signed by Honorable Mary G Lewis on 1/29/2013. (prou, )** (Entered: 01/29/2013) |
| 02/19/2013 | 15 | AMENDED ANSWER to 1 Complaint, by Travelers Casualty and Surety Company of America. (Wiseman, Jeffrey) (Entered: 02/19/2013) |
| 02/19/2013 | 16 | Rule 26(f) Report by Auto-Owners Insurance Company. (Attachments: # 1 Proposed Order Amended Discovery Plan)(Maybank, Amanda) (Entered: 02/19/2013) |
| 03/05/2013 | 17 | Local Rule 26.03 Answers to Interrogatories by Travelers Casualty and Surety Company of America.(Wiseman, Jeffrey) (Entered: 03/05/2013) |
| 04/01/2013 | 19 | **AMENDED CONFERENCE AND SCHEDULING ORDER: Motions to Amend Pleadings due by 7/1/2013, Plaintiffs ID of Expert Witness due by 7/29/2013, Defendants ID of Expert Witnesses Due by 8/29/2013, Records Custodian Affidavit due by 8/29/2013, Discovery due by 10/29/2013, Motion in Limine due by 1/15/2014, Motions due by 11/12/2013, Rule 26(a)(3) Disclosures due by 1/28/2014, Jury Selection Deadline 2/5/2014, Mediation Due by 1/11/2014. Parties shall furnish the Court pretrial briefs seven (7) days prior to the date set for jury selection. Signed by Honorable Mary G Lewis on 4/1/2013. (prou, )** (Entered: 04/01/2013) |
| 06/28/2013 | 21 | Consent MOTION for Extension of Time to Amend *Pleadings and join Parties and Incorporated Memorandum* by Auto-Owners Insurance Company. Response to Motion due by 7/15/2013. (Attachments: # 1 Affidavit in support of Motion to enlarge time to Amend pleadings and Add Parties)Proposed order is being emailed to chambers with copy to opposing counsel. (Maybank, Amanda) Modified on 7/1/2013 to replace with corrected document provided by filing user (prou, ). (Entered: 06/28/2013) |
| 07/01/2013 | 22 | **CONSENT AMENDED CONFERENCE AND SCHEDULING ORDER: Motions to Amend Pleadings due by 8/1/2013, Plaintiffs ID of Expert Witness due by 7/29/2013, Defendants ID of Expert Witnesses Due by 8/29/2013, Records Custodian Affidavit due by 8/29/2013, Discovery due by 10/29/2013, Motion in Limine due by 1/15/2014, Motions due by 11/12/2013, Rule 26(a)(3) Disclosures due by 1/28/2014, Jury Selection Deadline 2/5/2014, Mediation Due by 1/11/2014. Parties shall furnish the Court pretrial briefs seven (7) days prior to the date set for jury selection. Signed by Honorable Mary G Lewis on 7/1/2013. (prou, )** (Entered: 07/01/2013) |
| 07/01/2013 | 23 | **TEXT ORDER granting 21 Motion for Extension of Time to Amend Signed by Honorable Mary G Lewis on 7/1/2013.(prou, )** (Entered: 07/01/2013) |
| 08/01/2013 | 24 | MOTION to Amend/Correct 1 Complaint, by Auto-Owners Insurance Company. |

| | | |
|---|---|---|
| | | Response to Motion due by 8/19/2013. (Attachments: # 1 Exhibit Proposed Amended Complaint, # 2 Exhibit Schuler Amended Complaint, # 3 Exhibit Schuler Dismissal, # 4 Exhibit Travelers' Policy, # 5 Exhibit Auto Owners' Policy)Proposed order is being emailed to chambers with copy to opposing counsel.(Maybank, Amanda) (Entered: 08/01/2013) |
| 09/23/2013 | 25 | **TEXT ORDER granting 24 Motion to Amend/Correct Complaint Signed by Honorable Mary G Lewis on 9/23/2013.(prou, )** (Entered: 09/23/2013) |
| 09/23/2013 | 26 | AMENDED COMPLAINT against Travelers Casualty and Surety Company of America, filed by Auto-Owners Insurance Company. Service due by 1/24/2014. (Attachments: # 1 Exhibit A - Schuler Amended Complaint, # 2 Exhibit B - Schuler Dismissal, # 3 Exhibit C - Travelers Policy, # 4 Exhibit D - Auto Owners' Policy)(prou, ) (Entered: 09/23/2013) |
| 09/25/2013 | 27 | DELETION OF DOCKET ENTRY NUMBER 27 Reason: Document was a proposed order and not a motion. Proposed orders should not be filed. (prou, ) (Entered: 09/25/2013) |
| 10/04/2013 | 28 | CERTIFICATE OF SERVICE by Auto-Owners Insurance Company (Maybank, Amanda) (Entered: 10/04/2013) |
| 10/18/2013 | 29 | LETTER EXTENDING TIME TO ANSWER Travelers Casualty and Surety Company of America answer due 11/1/2013. (Wiseman, Jeffrey) (Entered: 10/18/2013) |
| 10/24/2013 | 30 | NOTICE of Appearance by John Lucius McCants on behalf of Auto-Owners Insurance Company (McCants, John) (Entered: 10/24/2013) |
| 10/25/2013 | 31 | Consent MOTION to Amend/Correct 22 Scheduling Order,, by Auto-Owners Insurance Company, Travelers Casualty and Surety Company of America. Response to Motion due by 11/12/2013. Proposed order is being emailed to chambers with copy to opposing counsel.(Wiseman, Jeffrey) (Entered: 10/25/2013) |
| 10/30/2013 | 32 | **SECOND AMENDED SCHEDULING ORDER: Discovery due by 1/10/2014, Motion in Limine due by 3/31/2014, Motions due by 1/27/2014, Rule 26(a)(3) Disclosures due by 4/14/2014, Jury Selection Deadline 4/21/2014, Mediation Due by 3/25/2014. Parties shall furnish the Court pretrial briefs seven (7) days prior to the date set for jury selection. Signed by Honorable Mary G Lewis on 10/30/2013. (prou, )** (Entered: 10/30/2013) |
| 10/30/2013 | 33 | **TEXT ORDER granting 31 Motion to Amend/Correct Signed by Honorable Mary G Lewis on 10/30/2013.(prou, )** (Entered: 10/30/2013) |
| 10/31/2013 | 34 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Travelers Casualty and Surety Company of America. Response to Motion due by 11/18/2013. (Attachments: # 1 Exhibit Green Ventures Int'l, LLC, P'ship v. Guttridge, 2010 WL 5019363 (D.S.C. Dec. 1, 2010), # 2 Exhibit Hartford Acc. and Indem. Co. v. Travelers Indem. Co., 554 So.2d 559 (Fla. 1st DCA 1989), # 3 Exhibit Encompass Ins. Co. of Am. v. Montgomery Mut. Ins. Co., 2010 WL 1791262 (D.S.C. May 3, 2010), # 4 Exhibit Admiral Indemnity Co. v. Travelers Cas. And Surety Co. of America, 2012 WL 3194881 (S.D.N.Y. 2012), # 5 Exhibit Berenyi, Inc. v. Landmark Am. Ins. Co., 2010 WL 233861 (D.S.C. Jan. 14, 2010), # 6 Exhibit Assurance Co. of America v. Penn-America Ins. Co., 2013 WL 1282141 (D.S.C. March 27, 2013), # 7 Exhibit Transcon. Ins. Co. v. MAJ Enterprises, Inc., 2005 WL 3465573, *3 (D.S.C. Dec. 19, 2005))No |

| | | proposed order.(Wiseman, Jeffrey) (Entered: 10/31/2013) |
|---|---|---|
| 11/18/2013 | 35 | RESPONSE in Opposition re 34 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by Auto-Owners Insurance Company.Reply to Response to Motion due by 12/2/2013 (McCants, John) (Additional attachment(s) added on 11/19/2013: # 1 Certificate of Service) (prou, ). Modified on 11/19/2013 to add to main document an attachment that was filed separately (prou, ). (Entered: 11/18/2013) |
| 11/27/2013 | 36 | MOTION for Extension of Time *to file reply to Response to Motion to Dismiss for Failure to State A Claim* by Travelers Casualty and Surety Company of America. Response to Motion due by 12/16/2013. No proposed order.(Wiseman, Jeffrey) (Entered: 11/27/2013) |
| 11/27/2013 | 37 | MOTION to Substitute Attorney by Auto-Owners Insurance Company. Response to Motion due by 12/16/2013. (Attachments: # 1 Certificate of Service Certificate of Service)Proposed order is being emailed to chambers with copy to opposing counsel. (McCants, John) (Entered: 11/27/2013) |
| 12/02/2013 | 38 | **CONSENT ORDER granting 37 Motion to Substitute Attorney. Signed by Honorable Mary G Lewis on 12/2/2013.(prou, )** (Entered: 12/02/2013) |
| 12/02/2013 | 40 | **TEXT ORDER granting 36 Motion for Extension of Time to file reply to Response to Motion to Dismiss for Failure to State A Claim. Reply now due by 12/17/2013. Signed by the Honorable Mary G Lewis on 12/2/2013. (hcic)** (Entered: 12/02/2013) |
| 12/17/2013 | 41 | REPLY to Response to Motion re 34 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by Travelers Casualty and Surety Company of America. (Wiseman, Jeffrey) (Entered: 12/17/2013) |
| 01/24/2014 | 43 | MOTION for Extension of Time re 32 Second Amended Scheduling Order And For a Third Amended Scheduling Order by Travelers Casualty and Surety Company of America. Response to Motion due by 2/10/2014. Proposed order is being emailed to chambers with copy to opposing counsel.(Wiseman, Jeffrey) Modified on 1/27/2014 to replace with corrected document provided by filing user and to link correct event to associated event (prou, ). (Entered: 01/24/2014) |
| 02/10/2014 | 45 | RESPONSE in Opposition re 43 MOTION for Extension of Time *And For a Third Amended Scheduling Order* Response filed by Auto-Owners Insurance Company.Reply to Response to Motion due by 2/21/2014 (McCants, John) (Entered: 02/10/2014) |
| 02/21/2014 | 46 | REPLY to Response to Motion re 43 MOTION for Extension of Time *And For a Third Amended Scheduling Order* Response filed by Travelers Casualty and Surety Company of America. (Wiseman, Jeffrey) Modified on 2/21/2014 to replace with corrected document provided by filing user (prou, ). (Entered: 02/21/2014) |
| 02/26/2014 | 47 | **THIRD AMENDED SCHEDULING ORDER: Discovery due by 3/11/2014, Motion in Limine due by 6/2/2014, Motions due by 3/31/2014, Rule 26(a)(3) Disclosures due by 6/16/2014, Jury Selection Deadline 6/30/2014, Mediation Due by 5/23/2014. Parties shall furnish the Court pretrial briefs seven (7) days prior to the date set for jury selection. Signed by Honorable Mary G Lewis on 2/26/2014. (prou, )** (Entered: 02/26/2014) |
| 02/26/2014 | 48 | **TEXT ORDER granting 43 Motion for Extension of Time Signed by Honorable Mary G Lewis on 2/26/2014.(prou, )** (Entered: 02/26/2014) |

| | | |
|---|---|---|
| 03/07/2014 | 49 | Case Reassigned to Judge Honorable R Bryan Harwell. Judge Honorable Mary G Lewis no longer assigned to the case. (glev, ) (Entered: 03/07/2014) |
| 03/31/2014 | 50 | MOTION for Summary Judgment by Travelers Casualty and Surety Company of America. Response to Motion due by 4/17/2014. No proposed order.(Wiseman, Jeffrey) (Entered: 03/31/2014) |
| 04/17/2014 | 51 | RESPONSE in Opposition re 50 MOTION for Summary Judgment Response filed by Auto-Owners Insurance Company.Reply to Response to Motion due by 4/28/2014 (Attachments: # 1 Exhibit A: Affidavit of Attorneys' Fees and Costs/Expenses) (McCants, John) (Entered: 04/17/2014) |
| 04/28/2014 | 52 | REPLY to Response to Motion re 50 MOTION for Summary Judgment Response filed by Travelers Casualty and Surety Company of America. (Wiseman, Jeffrey) (Entered: 04/28/2014) |
| 05/23/2014 | 53 | NOTICE of Hearing on Motions 34 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 50 MOTION for Summary Judgment: Motions Hearing set for 6/11/2014 at 9:30 AM in Florence #1, McMillan Federal Bldg, 401 W Evans St, Florence before The Honorable R Bryan Harwell. (hcic, ) (Entered: 05/23/2014) |
| 05/23/2014 | 54 | MOTION to Continue by Auto-Owners Insurance Company. Response to Motion due by 6/9/2014. No proposed order.(McCants, John) (Entered: 05/23/2014) |
| 05/23/2014 | 55 | ADR STATEMENT/CERTIFICATION by Auto-Owners Insurance Company(McCants, John) (Entered: 05/23/2014) |
| 05/27/2014 | 56 | **TEXT ORDER granting 54 Motion to Continue. The hearing is continued at the request of counsel for Plaintiff, to be rescheduled for another date. Signed by Honorable R Bryan Harwell on 5/27/2014.(mcot, )** (Entered: 05/27/2014) |
| 05/27/2014 | 57 | NOTICE of Cancellation of Hearing: Motion Hearing set for 6/11/2014 at 9:30 AM is cancelled and is to be rescheduled for another date. (mcot, ) (Entered: 05/27/2014) |
| 05/30/2014 | 58 | MOTION for Extension of Time *to Extend Deadline for Motion In Limines and Motion for a Status Conference* by Auto-Owners Insurance Company. Response to Motion due by 6/16/2014. No proposed order.(McCants, John) (Entered: 05/30/2014) |
| 06/02/2014 | 59 | **TEXT ORDER granting 58 Motion for Extension of Time to file Motions in Limine. This deadline is held in abeyance. The parties should submit a new amended scheduling order, if necessary, within 5 days after the court's ruling on the defendant's pending Motion to Dismiss and Motion for Summary Judgment. Signed by Honorable R Bryan Harwell on 6/2/14.(mwel, )** (Entered: 06/02/2014) |
| 06/27/2014 | 60 | Letter from Jeffrey J. Wiseman. (Wiseman, Jeffrey) (Entered: 06/27/2014) |
| 07/03/2014 | 62 | **TEXT ORDER regarding deadlines in Third Amended Scheduling Order. Counsel for Defendant filed a letter requesting clarification as to whether the Court's Order holding the deadline to file motions in limine in abeyance, *see* ECF No. 59, meant that all remaining deadlines in the scheduling order are held in abeyance pending the Court's ruling on the Defendant's motion to dismiss and motion for summary judgment. All deadlines are indeed held in abeyance pending the Court's disposition of these motions. The parties should submit a new amended scheduling order, if necessary, within 5 days after the Court's ruling on Defendant's pending motion to dismiss and motion for summary judgment. Signed** |

| | | |
|---|---|---|
| | | by the Honorable R. Bryan Harwell on 7/3/2014. (blwi, ) (Entered: 07/03/2014) |
| 07/22/2014 | 63 | **ORDER granting 50 Motion for Summary Judgment; finding as moot 34 Motion to Dismiss. Signed by the Honorable R Bryan Harwell on 7/22/2014. (hcic, )** (Entered: 07/22/2014) |
| 07/22/2014 | 64 | SUMMARY JUDGMENT is entered in favor of Defendant. (hcic, ) (Entered: 07/22/2014) |
| 08/15/2014 | 65 | NOTICE OF APPEAL as to 64 Summary Judgment, 63 Order on Motion for Summary Judgment, Order on Motion to Dismiss for Failure to State a Claim by Auto-Owners Insurance Company. - Filing fee $ 505, receipt number 0420-5497121. The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (McCants, John) (Entered: 08/15/2014) |
| 08/18/2014 | 66 | Transmittal Sheet for Notice of Appeal to USCA re 65 Notice of Appeal. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (hcic, ) (Entered: 08/18/2014) |
| 08/18/2014 | 67 | TRANSCRIPT PURCHASE ORDER by Auto-Owners Insurance Company for proceedings held on 04/15/14 (McCants, John) (Entered: 08/18/2014) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 09/24/2014 13:33:58 | | |
| PACER Login: | rl4298:4047471:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 4:12-cv-03423-RBH |
| Billable Pages: | 6 | Cost: | 0.60 |

Amended Complaint; C/A No. 4:12-cv-03423-RBH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY | ) | C/A NO: 4:12-CV-3423-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | **AMENDED COMPLAINT** |
| vs. | ) | |
| | ) | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW, the Plaintiff, above named, Auto-Owners Insurance Company, ("Auto-Owners"), complaining of the Defendant above named, alleges and states that:

### Jurisdictional Allegations

1.      Auto-Owners is a Michigan Corporation with its principle place of business in Lansing, Michigan. Auto-Owners is, however, qualified to do business in South Carolina, and does conduct business in South Carolina in the form of providing liability insurance coverage to the residents, citizens, and businesses of this State.

2.      The Defendant, Travelers Casualty and Surety Company of America ("Travelers"), is, upon information and belief, a foreign corporation with its principal place of business in the state of Connecticut. Travelers is, however, qualified to do business in South Carolina and does, upon information and belief, routinely conduct business in South Carolina in the form of providing liability insurance coverage to the residents, citizens, businesses, and organizations of this State.

3.      Upon information and belief, this Court has both personal and subject matter

–1–

jurisdiction over this matter and venue is proper in the Florence Division of the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1332 as the action is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

**Summary of the Claim**

4.      This action is brought pursuant to the Federal Declaratory Judgment Act, codified at 28 U.S.C. § 2201 and seeks a declaration that the Travelers policy is not excess to that of the Auto-Owners policy and that Travelers has a duty to defend the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors and any named individuals in connection with an action filed in the Court of Common Pleas, Horry County, South Carolina captioned as *John Schuler, Helen Schuler, Jeffery Merrell, Elizabeth Merrell, Kenneth Hartz, Jan Vaculicik, Barbara Vaculcik, Gordon Price, Gaylese Price, Bill Glassberg, and Diane Glassberg, representing a class of similarly situated people, vs. Hyperion Towers Homeowners Association Board of Directors, et al, 2011*-CP-26-05465 (hereinafter "the Schuler action").   A copy of the most recent amended complaint filed September 28, 2012 is attached as Exhibit A and is incorporated herein by reference.

5.      On May 8, 2013, a stipulation of dismissal was filed in connection with the Schuler action, dismissing certain individuals from the lawsuit.  A copy of the dismissal is attached as Exhibit B and is incorporated by reference.

**The Policies**

6.      A Non-Profit Management and Organization Liability Insurance Policy contract of insurance was entered into between Travelers and the Hyperion Towers Homeowners Association. The policy number is 025-LB-103593099 and was in effect from February 7, 2007 through February

–2–

7, 2010, and provides, upon information and belief, Directors and Officers errors and omissions coverage to the Hyperion Towers Homeowners Association, Inc. This policy of insurance is hereinafter referred to as "the Travelers Policy" and is attached as Exhibit C.

7.    The Travelers Policy provides in pertinent part, that "The Insurer shall have the right and duty to defend any claim covered by this policy, even if any of the allegations are groundless, false or fraudulent." The Travelers Policy also provides, "The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insured as the result of any Claim first made against the Insured and reported in the writing to the Insurer during the Policy Period or the Discovery Period, if purchased for a Wrongful Act."

8.    The Travelers Policy defines "claim," among other things, as "a civil proceeding commenced by the service of a complaint or similar pleading."

9.    The Travelers Policy further defines "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted by the Insured Organization or by one or more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices"

10.   Auto-Owners insured the Hyperion Towers under a commercial general liability policy from February 7, 1998 through February 7, 2001. The policy number is 912316-36059424 and is Attached and incorporated herein as Exhibit D, (hereinafter the "Auto-Owners Policy").

11.   The Auto-Owners Policy provides coverage for "bodily injury," "property damage," "advertising injury" and "personal injury."

–3–

12.     The Auto-Owners Policy does not provide Directors and Officers errors and omission coverage.

## Factual Allegations

13.     The Lawsuit described above and attached as Exhibit A alleges that the Hyperion Towers Homeowners Association, Inc., "is charged with certain duties and fiduciary duties to its members, including among other things, the duties of maintaining, repairing and replacing all of the common elements and limited common elements of the Regime, maintain adequate reserves, and timely communicating truthful information to homeowners."

14.     The Lawsuit further alleges that the Board of Directors is "charged with certain duties and fiduciary duties, including a duty to manage and direct the affairs of the HOA."

15.     The Lawsuit alleges a negligence claim against the Hyperion Towers Homeowners Association, the Hyperion Towers Board of Directors and the individual Board members, in which its states that these defendants specifically owed the following duties:

a.      "to keep the Plaintiffs properly informed of construction defects or defective workmanship found or discovered at the Regime so that the Regime could be repaired and protected from the damage caused by the construction defects or defective workmanship."

b.      that "Defendants owe or owed a duty to pursue any claims and initiate legal proceedings for damages to the Regime . . . "

c.      that "Defendants owed a duty to protect the interest of the property owners' in the Regime conformity with the customary and ordinary standards of the condominium management industry"

d.      that "Defendants owed a duty to Plaintiffs to establish an Annual Budget in

–4–

13

advance of each fiscal year that shall correspond to the calendar year that includes a reasonable

allowance for contingencies and reserves."

   e.  that "Defendants owed a duty to Plaintiffs in establishing an Annual Budget

that shall include a sum to be collected and maintained as a reserve fund for replacement of the

Regime."

   f.  that the Defendants owed a duty to Plaintiffs in establishing an Annual Budget

that shall include therein a sum to be collected an maintained as a general operating reserve that shall

be used to proved a measure of financial stability during periods of special stress that are the result of

emergencies or for some other reasons that places a financial stress upon the Association."

 16.  The Lawsuit alleges that these acts or omissions described above caused damage to

the Plaintiffs.

 17.  The Lawsuit further alleges a negligent misrepresentation claim alleging that

Hyperion Towers Homeowners Association Inc, the Board of Directors and individual Board

Members made false representations to the Plaintiffs regarding the condition of the Regime, and that

as a result, the "plaintiffs suffered a pecuniary loss as a direct and proximate result of reliance on the

representation."

 18.  Finally, the Lawsuit alleges a breach of fiduciary duty against Hyperion Towers

Homeowners Association Inc, the Board of Directors and individual Board Members, in that they

had a duty to "establish an Annual Budget to include a sum to be collected and maintained as a

general operating reserve to be used to provide a measure of financial stability during periods of

special stress[,] as a result of emergencies or for some other reason that places a financial stress upon

the Association . . . ."

–5–

19.    The Schuler action seeks actual and punitive damages from the Hyperion Towers Homeowners Association, Inc., the Board of Directors, and individual Board Members.

20.    By way of history, after the Schuler action was filed and served upon The Hyperion Towers Homeowners Association, Inc., the Board of Directors and the individual board members, the suit was tendered to Auto-Owners and Travelers, as well as another carrier not party to this suit.

21.    Auto-Owners is providing the Hyperion Towers Homeowners Association, Inc., the Board of Directors and the individual board members with a defense in the Schuler action.

22.    To date, Auto-Owners has incurred costs of approximately $250,000.00 in the defense of Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals

23.    Travelers acknowledges a duty to defend in the Schuler action, but has refused to do so, contending that any of its obligations under the Travelers' Policy are excess to that of the Auto-Owners Policies.

24.    There are allegations in the Schuler action that do not involve "bodily injury," "property damage," "personal injury," or "advertising injury" as defined by the Auto-Owners Policy, but rather allege errors and omissions regarding the actions of The Hyperion Towers Homeowners Association, Inc., the Board of Directors, and the individual Board Members.

25.    As such, the allegations of errors and omission regarding the actions of The Hyperion Towers Homeowners Association, Inc., the Board of Directors, and the individual Board Members would fall under the definition of "Wrongful Act" as defined by the Travelers Policy.

26.    A dispute has arisen between Auto-Owners and Travelers as to whether Travelers' duty to defend as defined its policy is excess to that of the Auto-Owners policy.

–6–

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment Action)

27.    Auto-Owners, re-alleges and re-avers the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

28.    Upon information and belief, South Carolina substantive law applies to this dispute as the insurance at issue surrounds the lives, property, and interests situated in South Carolina.

29.    Upon information and belief, this Honorable Court has the power pursuant to 28 U.S.C. § 2201 to decide and determine the issues presented in this action and may enter a final judgment with respect to these issues.

30.    Upon information and belief, Travelers provides a policy of insurance and was and is under a duty and obligation, pursuant to the Policy, to defend The Hyperion Towers Homeowners Association, Inc., the Board of Directors, and the individual Board Members for all matters relating to the Schuler action.  Travelers has refused to defend The Hyperion Towers Homeowners Association, Inc., the Hyperion Towers Board of Directors and individual members of the Association.

31.    As such, Auto-Owners seeks a declaration that the Travelers Policy is not excess to that of Auto-Owners, and otherwise, has a duty to defend the Hyperion Towers Homeowners Association, Inc., and individual members of the Association named in the Schuler action.

## FOR A SECOND CAUSE OF ACTION
### (Contribution)

32.    Auto-Owners realleges and re-avers the allegations in Paragraphs 1 through 31 herein as if restated verbatim.

33.    Auto-Owners is obligated to defend the Hyperion Towers Association, Inc., the

–7–

Hyperion Towers Board of Directors, and the named individuals against claims alleged in the Schuler Action pursuant to a general liability policy previously described.

34.    Travelers is obligated to defend the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals against claims alleged in the Schuler Actions pursuant to the directors errors and omissions policy previously described.

35.    As such, Auto-Owners and Travelers are equally obligated to defend the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals against claims alleged in the Schuler Actions.

36.    Auto-Owners has paid more than its fair share of the defense of the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals.

37.    Pursuant to South Carolina Appellate Court Rules 217, and 244, as well as the Rules of Professional Conduct 407, SCACR: Rule 3.1, Auto-Owners alleges that *Sloan Construction Co., Inc. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977), is unclear and is not controlling as to a dispute between insurance companies in which their policies insure different risks.

38.    As such, equity requires Travelers to pay Auto-Owners its fair share of the cost of the defense of the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals.

**FOR A THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**

39.    Auto-Owners, realleges and re-avers the allegations in Paragraphs 1 through 38 herein as if restated verbatim.

40.    Pursuant to South Carolina Appellate Court Rules 217, and 244, as well as the Rules

–8–

of Professional Conduct 407, SCACR: Rule 3.1, Auto-Owners alleges that *Sloan Construction Co., Inc. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977), is unclear and is not controlling as to a dispute between insurance companies in which their policies insure different risks.

41.     By paying the entire cost of defense for the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals in the Schuler Action, Auto-Owners has conferred a benefit on Travelers.

42.     Travelers, which is on notice of the Schuler Action and of the payment of the costs of defense by Auto-Owners, has appreciated that benefit.

43.     To permit Travelers to retain this benefit would reward its failure to recognize its contractual obligation, and penalize Auto-Owners for fulfilling its contractual obligations to defend the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals.

### FOR A FOURTH CAUSE OF ACTION
### (Equitable Subrogation)

44.     Auto-Owners, realleges and re-avers the allegations in Paragraphs 1 through 43 herein as if restated verbatim.

45.     Pursuant to South Carolina Appellate Court Rules 217, and 244, as well as the Rules of Professional Conduct 407, SCACR: Rule 3.1, Auto-Owners alleges that *Sloan Construction Co., Inc. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977), is unclear and is not controlling as to a dispute between insurance companies in which their policies insure different risks.

46.     Auto-Owners is defending the Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals in the Schuler action. In doing so it has paid a

–9–

debt owing by Travelers.

47.    Auto-Owners has direct interest in the discharge of the debt owed by Travelers, and is also secondarily liable for the debt.

48.    No injustice would be done to any party by the allowance of equity.

WHEREFORE, Auto-Owners, prays that this Honorable Court issue an Order declaring that the Travelers' policy is not excess to that of the Auto-Owners policy and that it is required to defend Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and named individuals in the Schuler Action. Auto-Owners also requests that the Court enter a judgment in its favor requiring Travelers to pay its equitable share of the sums paid by Auto-Owners to defend Hyperion Towers Association, Inc., the Hyperion Towers Board of Directors, and the named individuals in the Schuler action, and for such other and further relief as justice may require.

Respectfully Submitted,

MAYBANK LAW FIRM, LLC

s/ Amanda R. Maybank
Amanda R. Maybank (FED # 09131)
MAYBANK LAW FIRM, LLC
531 Savannah Highway (29407)
P.O. Box 12579
Charleston, SC  29422
P: (843) 766-8101
F: (843) 766-8103
Attorneys for Plaintiff

August 1, 2013

–10–

Exhibit A to Amended Complaint: State of South Carolina, County of Horry
Second Amended Complaint; C/A No. 11-CP-26-05465

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS
                        )    FIFTEENTH JUDICIAL CIRCUIT
COUNTY OF HORRY         )    CIVIL ACTION NO.:  11-CP-26-05465

JOHN SCHULER, HELEN SCHULER,          )
JEFFREY MERRELL, ELIZABETH MERRELL    )
KENNETH HARTZ, JAN VACULCIK,          )
BARBARA VACULCIK, GORDON PRICE,       )
GAYLENE PRICE, BILL GLASSBERG,        )
and DIANE GLASSBERG,                  )
representing a class of similarly situated people.  )
                                      )
            Plaintiffs,               )       **SECOND AMENDED**
                                      )          **COMPLAINT**
            vs.                       )
                                      )       <u>JURY TRIAL DEMANDED</u>
                                      )
HYPERION TOWERS HOMEOWNERS            )
ASSOCIATION, INC., HYPERION TOWERS    )
HOMEOWNERS ASSOCIATION BOARD          )
OF DIRECTORS, JIM ALEXANDER,          )
JOHN BAYNES, WENDELL BURTON,          )
SANDRA CRONEY, D. A. DAVIS, KOY       )
DAWKINS, CHET HIRSCHY,                )
MICHAEL HUGGINS, DAN JAMES,           )
RUSS JONES, CARROLL LITTLE,           )
JOHN MARKELL, BOBBY MARTIN,           )
TONY MAYE, DOROTHY MCELWEE,           )
GEORGE MCGEE, TOMMY MULLINS,          )
RON PIRACCI, LUTHER PITTS,            )
OSMAN SOYER, JERRY STEFFEY,           )
E. C. TUCKER a/k/a CHUCK TUCKER,      )
PALMER WATSON, LUKE WHITESIDE,        )
BILL WILLIAMS, RODNEY WILSON,         )
AND MIKE ZAGER,                       )
individually and in their capacities as directors  )
and officers of Hyperion Towers Homeowners  )
Association, Inc.,                     )
                                      )
            Defendants.               )
_____ )

FILED
HORRY COUNTY
12 SEP 28  PM 2:59
MELANIE HUGGINS-WARD
CLERK OF COURT

TO:   THE DEFENDANTS ABOVE-NAMED:



EXHIBIT
A

The Plaintiffs, above named, complaining of the Defendants herein, respectfully allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs John Schuler, Helen Schuler, Jeffrey Merrell, Elizabeth Merrell, Kenneth Hartz, Jan Vaculcik, Barbara Vaculcik, Gordon Price, Gaylene Price, Bill Glassberg, and Diane Glassberg own or have owned units at the Hyperion Towers Horizontal Property Regime (hereinafter Regime) in North Myrtle Beach, South Carolina and bring this action in their names and pursuant to Rule 23, SCRCP, as representing a class composed of similarly situated people who own or have owned condominium units at the Regime.  The Plaintiffs would further allege and show:  (1) the class is so numerous that joinder of all members is impracticable;  (2) there are questions of law and fact common to the class;  (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class;  (4)  the representative parties will fairly and adequately protect the interests of the class;  and (5)  the amount in controversy exceeds One Hundred and No/100 ($100.00) Dollars for each member of the class.

2.     Plaintiffs John and Helen Schuler are residents of the State of Massachusetts and formerly owned a unit at the Regime.

3.     Plaintiffs Jeffrey and Elizabeth Merrell are residents of the State of Ohio and owners of a unit at the Regime.  By virtue of the Merrell's ownership interest in the unit at the Regime, the Merrells are members or shareholders of the incorporated association of owners known as the Hyperion Towers Homeowners Association, Inc. (hereinafter HOA).

4.     Plaintiff Kenneth Hartz is a resident of the State of North Carolina and formerly owned a unit at the Regime.

2

5.    Plaintiffs Jan and Barbara Vaculcik are residents of the State of North Carolina and own a unit at the Regime.  By virtue of the Vaculcik's ownership interest in the unit at the Regime, the Vaculciks are members or shareholders of the incorporated association of owners known as the HOA.

6.    Plaintiffs Gordon and Gaylene Price are residents of the State of North Carolina and own a unit at the Regime.  By virtue of the Price's ownership interest in the unit at the Regime, the Prices are members or shareholders of the incorporated association of owners known as the HOA.

7.    Plaintiffs Bill and Diane Glassberg are residents of the State of South Carolina and own a unit at the Regime.  By virtue of the Glassberg's ownership interest in the unit at the Regime, the Glassbergs are members or shareholders of the incorporated association of owners known as the HOA.

8.    Defendant HOA is a non-profit corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Horry County, South Carolina and transacts business in Horry County, South Carolina.  Accordingly, jurisdiction over this Defendant is proper in this Court under South Carolina Code Ann. Section 36-2-802 (1976).

9.    Defendant Hyperion Towers Homeowners Association Board of Directors (hereinafter Board of Directors) is responsible for the affairs and management of the HOA in Horry County, South Carolina and transacts business in Horry County, South Carolina. Accordingly, jurisdiction over this Defendant is proper in this Court under South Carolina Code Ann. Section 36-2-802 (1976).

10.    Upon information and belief, the following named individuals are current or former directors and/or officers of the HOA, serving one or more terms from 1985 to present:

3

Jim Alexander, John Baynes, Wendell Burton, Sandra Croney, D. A. Davis, Koy Dawkins, Chet

Hirschy, Michael Huggins, Dan James, Russ Jones, Carroll Little, John Markell, Bobby Martin,

Tony Maye, Dorothy McElwee, George McGee, Tommy Mullins, Ron Piracci, Luther Pitts,

Osman Soyer, Jerry Steffey, E. C. Tucker a/k/a Chuck Tucker, Palmer Watson, Luke Whiteside,

Bill Williams, Rodney Wilson, and Mike Zager.

11.    Jurisdiction and venue are proper in Horry County, South Carolina.

12.    The class of Plaintiffs consists of all persons, corporations, partnerships,

unincorporated associations or other entities that own in whole or in part any unit in the Regime.

## FACTS COMMON TO ALL CAUSES OF ACTION

13.    According to its Master Deed, the HOA was organized to efficiently and

effectively provide for the administration of the Regime and is charged with certain duties and

fiduciary duties to its members including, among other things, the duties of maintaining,

repairing and replacing all of the common elements and limited common elements of the

Regime, maintaining adequate reserves, and timely communicating truthful information to

homeowners.

14.    According to the By-Laws of the HOA, a Board of Directors will be elected and,

once elected, the Board of Directors is charged with certain duties and fiduciary duties, including

a duty to manage and direct the affairs of the HOA.  Further, the Board of Directors may exercise

all of the powers of the HOA, subject to certain restrictions imposed by law, the Master Deed

and the By-Laws of the HOA, and shall be responsible for the maintenance, repair, and

replacement of the Regime.

4

## FIRST CAUSE OF ACTION
### (NEGLIGENCE)

15.    Plaintiffs reference and incorporate every allegation set forth above as if fully repeated verbatim herein.

16.    Defendants owed a duty to Plaintiffs to exercise the competency and skill necessary to properly maintain or repair the Regime.

17.    Defendants owed a duty to keep the Plaintiffs properly informed of construction defects or defective workmanship found or discovered at the Regime so that the Regime could be repaired and protected from the damage caused by the construction defects or defective workmanship.

18.    Defendants owe or owed a duty to pursue any claims and initiate legal proceedings for damages to the Regime caused by, among other things, defective construction and defective workmanship at the Regime.

19.    Defendants owed a duty to Plaintiffs to protect the interest of the property owners' in the Regime conformity with the customary and ordinary standards of the condominium management industry.

20.    Defendants owed a duty to Plaintiffs to establish an Annual Budget in advance of each fiscal year that shall correspond to the calendar year that includes a reasonable allowance for contingencies and reserves.

21.    Defendants owed a duty to Plaintiffs in establishing an Annual Budget that shall include a sum to be collected and maintained as a reserve fund for replacement of the Regime.

22.    Defendants owed a duty to Plaintiffs in establishing an Annual Budget that shall include therein a sum to be collected and maintained as a general operating reserve that shall be

5

used to provide a measure of financial stability during periods of special stress that are a result of emergencies or for some other reason that places a financial stress upon the Association.

23.    Defendants were, individually, jointly, or in combination, negligent, grossly negligent, wanton, willful, and careless breaching their duties to the Plaintiffs including, but not limited to, one or more of the following:

a.  In failing to exercise the degree of competency and skill necessary to maintain or repair the Regime.

b.  In failing to properly inform the Plaintiffs of construction defects or defective workmanship found or discovered at the Regime;

c.  In failing to pursue any claims that the Plaintiffs may have had against any potentially responsible party related to the defective condition of the Regime or defective workmanship at the Regime;

d.  In failing to protect the owners' property interests in conformity with the customary and ordinary standards of the condominium management industry;

e.  In failing to establish an Annual Budget in advance of each fiscal year that shall correspond to the calendar year that includes a reasonable allowance for contingencies and reserves;

f.  In failing to establish an Annual Budget that shall include a sum to be collected and maintained as a reserve fund for replacement of the Regime;

g.  In failing to establish an Annual Budget that shall include therein a sum to be collected and maintained as a general operating reserve that shall be used to provide a measure of financial stability during periods of special stress that are

6

a result of emergencies or for some other reason that places a financial stress upon the Association.

24.    All of the above actions were the direct and proximate cause of the damages suffered by the Plaintiffs.

25.    Based on the above, Plaintiffs are entitled to a judgment against the Defendants for actual damages and punitive damages.

### SECOND CAUSE OF ACTION
(NEGLIGENT MISREPRESENTATION)

26.    Plaintiffs reference and incorporate every allegation set forth above as if fully repeated verbatim herein.

27.    Defendants made false representations to the Plaintiffs related to the defective condition of the Regime or defective workmanship at the Regime.

28.    Defendants had a pecuniary interest in making the statement or statements.

29.    Defendants owed a duty to the Plaintiffs to see that truthful information was communicated to the Plaintiffs.

30.    Defendants failed to exercise due care and as a result breached its duty to the Plaintiffs.

31.    Plaintiffs justifiably relied on the representation.

32.    Plaintiffs suffered a pecuniary loss as a direct and proximate result of reliance on the representation.

33.    Based on the above, Plaintiffs are entitled to a judgment against the Defendants for actual and punitive damages.

7

## THIRD CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)

34.    Plaintiffs reference and incorporate every allegation set forth above as if fully repeated verbatim herein.

35.    Defendants had a fiduciary relationship to Plaintiffs and owed fiduciary duties and obligations to the Plaintiffs.

36.    Defendants were or should have been aware of the construction defects and defective workmanship at the Regime as a result of the work and opinions of contractors, sub-contractors, or experts that examined, investigated, or repaired the Regime.

37.    Defendants had an affirmative duty to keep the Plaintiffs properly informed of the condition of the Regime and the defects found or discovered at the Regime.

38.    Defendants had an affirmative duty to timely pursue any claims and institute legal proceedings to recover damages to the Regime caused by construction defects and defective workmanship at the Regime.

39.    Defendants had a duty to protect the owners' property interests in conformity with the customary and ordinary standards of the condominium management industry.

40.    Defendants had a duty to establish an Annual Budget in advance of each fiscal year corresponding to the calendar year that included a reasonable allowance for contingencies and reserves especially considering the construction defects and defective workmanship at the Regime.

41.    Defendants had a duty to establish an Annual Budget to include a sum to be collected and maintained as a reserve fund for replacement of the Regime especially considering the construction defects and defective workmanship at the Regime.

42.    Defendants had a duty to establish an Annual Budget to include a sum to be collected and maintained as a general operating reserve to be used to provide a measure of financial stability during periods of special stress as a result of emergencies or for some other reason that places a financial stress upon the Association especially considering the construction defects and defective workmanship at the Regime.

43.    Defendants have been negligent, grossly negligent, willful, wanton and reckless in breaching these and other duties.

44.    Defendants' negligent, grossly negligent, willful, wanton and reckless breaches of duties have directly and proximately caused damage to the Plaintiffs.

45.    Based on the above, Plaintiffs are entitled to a judgment against the Defendants for actual and punitive damages.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

A.    For actual damages;

B.    For punitive damages;

C.    For the costs and disbursements of this action; and

D.    For such other and further relief as this Court may deem just and proper.

STANLEY LAW FIRM

Stacy L. Stanley
3303 Highway 9 East
Little River, SC 29566
(843) 390-9111
Attorney for the Plaintiffs

7-26, 2012.

9

Exhibit B to Amended Complaint: State of South Carolina, County of Horry
Consent Order of Dismissal Without Prejudice; C/A No. 11-CP-26-05465

STATE OF SOUTH CAROLINA          )          IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF HORRY                  )          Civil Action No. 2011-CP-26-05465

John Schuler, Helen Schuler, Jeffrey
Merrell, Elizabeth Merrell, Kenneth Hartz,
Jan Vaculcik, Barbara Vaculcik, Gordon
Price, Gaylene Price, Bill Glassberg, and
Diane Glassberg, Representing a Class of
Similarly Situated People

          Plaintiffs,

          vs.

Hyperion Towers Homeowners Association,
Inc., Hyperion Towers Homeowners
Association Board of Directors,        Jim
Alexander, John Baynes, Wendell Burton,
Sandra Croney, D. A. Davis, Koy Dawkins,
Chet Hirschy, Michael Huggins, Dan James,
Russ Jones, Carroll Little, John Markell,
Bobby Martin, Tony Maye, Dorothy
McElwee, George McGee, Tommy Mullins,
Ron Piracci, Luther Pitts, Osman Soyer,
Jerry Steffey, E. C. Tucker a/k/a
Chuck Tucker, Palmer Watson, Luke
Whiteside, Bill Williams, Rodney Wilson,
and Mike Zager, Individually and in their
Capacities as Directors and Officers of
Hyperion Towers Homeowners Association,
Inc.,
          Defendants.

**CONSENT ORDER OF DISMISSAL WITHOUT PREJUDICE AS TO WENDELL BURTON, SANDRA CRONEY, D. A. DAVIS, CHET HIRSCHY, MICHAEL HUGGINS, DAN JAMES, RUSS JONES, JOHN MARKELL, TONY MAYE, DOROTHY MCELWEE, GEORGE MCGEE, TOMMY MULLINS, RON PIRACCI, OSMAN SOYER, JERRY STEFFEY, E. C. TUCKER A/K/A CHUCK TUCKER, PALMER WATSON, LUKE WHITESIDE, BILL WILLIAMS, RODNEY WILSON AND MIKE ZAGER**

**[NOT ENDING CASE]**

FILED
HORRY COUNTY
2013 MAY -8 PM 12: 16
MELANIE HUGGINS-WARD
CLERK OF COURT

Pursuant to Rule 41(a)(1) of the South Carolina Rules of Civil Procedure, the above-

named Plaintiffs consent to dismiss all claims against Wendell Burton, Sandra Croney, D.A.

Davis, Chet Hirschy, Michael Huggins, Dan James, Russ Jones, John Markell, Tony Maye,

Dorothy McElwee, George McGee, Tommy Mullins, Ron Piracci, Osman Soyer, Jerry Steffey,

E. C. Tucker a/k/a Chuck Tucker, Palmer Watson, Luke Whiteside, Bill Williams, Rodney

Wilson, and Mike Zager Individually and in their Capacities as Directors and Officers of



EXHIBIT
B

31

Hyperion Towers Homeowners Association, Inc., as set forth in Plaintiffs' Second Amended Complaint, without prejudice.

This Consent Order is contingent upon Wendell Burton, Sandra Croney, D.A. Davis, Chet Hirschy, Michael Huggins, Dan James, Russ Jones, John Markell, Tony Maye, Dorothy McElwee, George McGee, Tommy Mullins, Ron Piracci, Osman Soyer, Jerry Steffey, E. C. Tucker a/k/a Chuck Tucker, Palmer Watson, Luke Whiteside, Bill Williams, Rodney Wilson, and Mike Zager agreeing that if his / her dismissal eliminates, affects, interferes, or mitigates any insurance claim, coverage, or defense related to the claims against Hyperion Towers Homeowners Association, Inc. or Hyperion Towers Homeowners Association Board of Directors, then Plaintiffs may amend its complaint, as permitted by law, to add Wendell Burton, Sandra Croney, D.A. Davis, Chet Hirschy, Michael Huggins, Dan James, Russ Jones, John Markell, Tony Maye, Dorothy McElwee, George McGee, Tommy Mullins, Ron Piracci, Osman Soyer, Jerry Steffey, E. C. Tucker a/k/a Chuck Tucker, Palmer Watson, Luke Whiteside, Bill Williams, Rodney Wilson, and Mike Zager as parties to this action without prejudice as to any statute of limitations issues.

WE SO MOVE:

_____
Stacy L. Stanley, Esquire
Stanley Law Firm
3303 Highway 9 East
Little River, SC 29566
**Counsel for Plaintiffs**

Date: ___5-8-13___

WE CONSENT:

_____
Christopher H. Pearce, Esquire
The Pearce Law Group, P.C.
1294 Professional Drive, Suite B
Myrtle Beach, SC 29577
**Counsel for Individual Board of Director Defendants (Except Koy Dawkins)**

Date: ___5.8.13___

2

WE CONSENT:

_____
Chad E. Poteat, Esquire
Murphy & Grantland
Post Office Box 6648
Columbia, SC 29260
**Counsel for Koy Dawkins**

Date: ___5/8/13_____

WE CONSENT:

_____
Morgan S. Templeton, Esquire
Wall Templeton & Haldrup, P.A.
145 King Street, Suite 300
Charleston, SC 29401
**Counsel for Hyperion Towers**
**Homeowners Association, Inc. and**
**Hyperion Towers Homeowners**
**Association Board of Directors**

Date: ___5/8/13_____

WE CONSENT:

_____
Luther O. McCutchen, III, Esquire
McCutchen, Mumford, Vaught, O'Dea & Geddie, P.A.
4610 Oleander Drive, Suite 203
Myrtle Beach, SC 29577
**Counsel for Hyperion Towers**
**Homeowners Association, Inc. and**
**Hyperion Towers Homeowners**
**Association Board of Directors**

Date: ___5/8/13_____

3

Exhibit C to Amended Complaint: Travelers Insurance Policy

**TRAVELERS**

**NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY**

DECLARATIONS                                                POLICY NO. 103593099

Travelers Casualty and Surety Company of America
Hartford, CT 06183
(Herein, the "Insurer")

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

NOTICE:  THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE "INSUREDS" DURING THE "POLICY PERIOD" AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS "DEFENSE COSTS."  ANY "DEFENSE COSTS" THAT ARE INCURRED SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION.  THE INSURER SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY CLAIM AGAINST THE INSUREDS UNDER THIS POLICY.

**ITEM 1.         INSURED ORGANIZATION'S NAME and PRINCIPAL ADDRESS:**

HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.
PO BOX 395
C/O PROPERTY & ASSOCIATION MANAGEMENT
LITTLE RIVER, SC 29566

**ITEM 2.         POLICY PERIOD:**

(a) From February 7, 2007      (b) To February 7, 2010      at 12:01 a.m.
Local Time both dates at the Principal Address stated in ITEM 1

**ITEM 3.         LIMIT OF LIABILITY (Inclusive of Defense Costs):**

$1,000,000.00 maximum aggregate Limit of Liability for all Claims first made in the Policy Period.

**ITEM 4.         RETENTION:**

(a) No Retention shall apply to Non-Indemnified Loss

(b)          $1,000.00 all Indemnified Loss.

**ITEM 5.         PREMIUM:**

$2,778.00  prepaid premium for the Policy Period.

**ITEM 6.         PREMIUM FOR DISCOVERY PERIOD:** $661.50

**ITEM 7.         LENGTH OF DISCOVERY PERIOD:**          365 days.

**ITEM 8.         NOTICE REQUIRED TO BE GIVEN TO THE INSURER SHALL BE ADDRESSED TO:**

Travelers Bond & Financial Products Claim
One Tower Square, 2S2
Hartford, CT 06183

**ITEM 9.         PENDING AND PRIOR LITIGATION DATE:** February 7, 2001

# SPECIMEN

35



EXHIBIT

C

| ITEM 10. | ENDORSEMENTS ATTACHED AT ISSUANCE: |
|---|---|

ILT-1018 09-04, 70021 09-98, 70010 08-98, 70064 04-00, 72023 01-03, 70008 12-02, 70003SC 08-98, 70004 04-00, 70007 02-02, 72047 08-96

These Declarations, the completed signed Application and their attachments and any materials submitted therewith, and Policy form 72001 (06/98) with Endorsements shall constitute the contract among the Insurer and the Insureds ("Policy").

_____

Countersigned By (if required)

CIRI 72000 (06/98)

# SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SOUTH CAROLINA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:
**NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY**

1. Section II. **DEFINITIONS** Paragraph J. is replaced in its entirety by the following:

   J.    Loss means the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages, judgments, settlements and Defense Costs. Loss does not include  (1) the multiple portion of any multiple damage award, (2) criminal or civil fines or penalties imposed by law, (3) taxes, (4) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed.

2. Section III. **DISCOVERY PERIOD** Paragraph 1) is replaced in its entirety by the following:

   1)    If the Insurer or the Parent Organization cancels, fails, or refuses to renew this Policy for any reason other than the Insured's non-payment of premium or non-compliance with the terms and conditions of this Policy, then the Parent Organization shall have the right, on payment of the additional premium shown in Item 6 of the Declarations, to an extension of the coverage granted by this Policy for any Claim first made against any Insured during the period specified in Item 7 of the Declarations (minimum 12 months), but only with respect to any actual or alleged Wrongful Act committed or allegedly committed before the Policy Termination Date.

CIRI 70021 (09/98)

### SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America        POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

## FAILURE TO MAINTAIN FLOOD/EARTHQUAKE SHOCK INSURANCE EXCLUSION

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insureds based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the failure or omission on the part of the Insured to obtain, effect, maintain or adhere to insurance; provided, however, that this exclusion shall only apply to Claims related to the perils of flood and earthquake shock.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    **February 7, 2007**, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____
Authorized Representative

CIRI 70010 (08/98)

## SPECIMEN

38

ISSUED BY: Travelers Casualty and Surety Company of America    POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

### AMENDED DEFINITION OF INSURED TO INCLUDE PROPERTY MANAGER

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the payment of premium:

1.    Section II. DEFINITIONS, sub-paragraph G. Insured is amended to include:

    a.    any independent management organization under a written contractual agreement solely with the Insured Organization (a "Property Manager") and

    b.    any director, officer or employee of a Property Manager

    but only while performing property management services for the Insured Organization which are enumerated in such written contractual agreement.

2.    Section IV. EXCLUSIONS is amended by adding the following:

    brought or maintained by or on behalf of the Insured Organization against any Insured added pursuant to paragraph 1 of this endorsement;

3.    If any Claim made against a Property Manager or any director, officer or employee thereof gives rise to coverage both under this Policy and under any other liability policy of similar insurance issued by the Insurer or any of its affiliates, the Insurer's maximum aggregate limit of liability under all such policies for all Loss, including Defense Costs, from such Claim shall not exceed $1,000,000.00 subject to the remaining Limits of Liability of such policies.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on **February 7, 2007**, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by: _____

    On behalf of the entity named in
    ITEM 1 of the Declarations.

    _____

    Authorized Company Representative

CIRI 70064 (04-00)

# SPECIMEN
## 39

ISSUED BY: Travelers Casualty and Surety Company of America            POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

<u>DELETION OF AMENDED OPERATION OF RETENTION WORDING</u>

This endorsement modifies insurance provided under the following:

Non-Profit Management and Organization Liability Insurance Policy

In consideration of the payment of the premium, Section V. GENERAL CONDITIONS AND LIMITATIONS. A. LIMIT OF LIABILITY AND RETENTION. 5) and 6) are deleted from the Policy and any endorsement thereto.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    February 7, 2007 , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____
                                                    Authorized Representative

CIRI 72023 (01-03)

SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CLAIMS AGAINST BUILDER/DEVELOPER

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the premium charged,

1.   For purposes of this endorsement, the following terms have the following meanings:

   a.   "Builder/Developer Board Member" means any person appointed or elected to serve on the board of directors of the **Parent Organization** by the builder, developer or sponsor of the **Parent Organization**, and who was both a director or officer of the **Parent Organization** and a director, officer, employee or agent of such builder, developer, or sponsor of the **Parent Organization**;

   b.   "Policy Year" means each year of the **Policy Period** beginning with the **Policy Inception Date** and ending one year thereafter and each successive year until canceled or non-renewed.

2.   The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any Builder/Developer Board Member after the end of the Policy Year in which such Builder/Developer Board Member ceases to serve on the board of directors of the **Parent Organization**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
   February 7, 2007 , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by:    _____
                On behalf of the entity named in
                ITEM 1 of the Declarations.


                _____
                Authorized Company Representative

CIRI 70008 (12-02)

# SPECIMEN
41

Appeal: 14-1837    Doc: 14    Filed: 09/26/2014    Pg: 45 of 184

ISSUED BY: Travelers Casualty and Surety Company of America        POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

### MULTI - YEAR POLICY PERIOD ENDORSEMENT

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the payment of the premium:

1. Section II. **DEFINITIONS** is amended to include the following:

   Policy Year means, within the Policy Period, the period of one year following the Policy Inception Date of this Policy or any anniversary thereof, or if the time between the Policy Inception Date or any anniversary and the Policy Termination Date of the policy is less than one year, such lesser period.

2. Section III. **EXTENSIONS** C. **DISCOVERY PERIOD**, sub-paragraph 4) is deleted and replaced in its entirety by the following:

   4)  The Discovery Period, if purchased, shall be treated as part of the last Policy Year prior to the inception of the Discovery Period and not an additional period. The Limit of Liability in respects to Claims made during the Discovery Period shall be part of, and not in addition to the applicable maximum Limit of Liability for Claims made or deemed made during such last Policy Year.

3. Section V. **GENERAL CONDITIONS AND LIMITATIONS**, A. **LIMIT OF LIABILITY AND RETENTION** is deleted in its entirety and replaced by the following:

   A.    **LIMIT OF LIABILITY AND RETENTION**

   1)  The Insurer shall pay Loss in excess of the applicable Retention set forth in Item 4 of the Declarations up to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations for all Claims made or deemed made during the applicable single Policy Year.

   2)  Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim.

CIRI 70003 SC (08/98)                                                Page 1 of 4

# SPECIMEN

3)    If the Insured Organization is permitted or required by common or statutory law to ultimately indemnify the Insured Persons for any Loss, or to advance Defense Costs on their behalf, and does not in fact do so other than for reasons of Financial Insolvency, then any payment of such Loss or any advancement of such Defense Costs by the Insurer shall not be subject to any Retention amount. In that event, the Insured Organization shall reimburse and hold harmless the Insurer for such Loss up to the Retention amount set forth in Item 4(b) of the Declarations. For purposes of this Section V(A), the resolutions of the Insured Organization shall be deemed to provide indemnification for Loss to the fullest extent permitted by common or statutory law.

4)    If Loss resulting from a Claim is subject in part to no Retention and in part to the Retention for Indemnified Loss, the Retention set forth in Item 4(b) of the Declarations shall be applied only to that part of the Loss which is Indemnified Loss.

5)    With respect to any Claim, other than a Claim for Wrongful Employment Practices, the applicable Retention shall apply only to Defense Costs, not to any settlement, judgment or other damage.

6)    If a Claim, other than a Claim for Wrongful Employment Practices, is fully and finally resolved with prejudice with respect to all Insureds without any Insured becoming legally obligated to pay any judgment, settlement or damages (other than Defense Costs) as the result of such Claim, no Retention shall apply with respect to such Defense Costs.

7)    Defense Costs shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations, and Defense Costs shall reduce the maximum aggregate Limit of Liability.

8)    The amount set forth in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer for all Loss from all Claims or Related Claims made or deemed to be made during any single Policy Year, regardless of the time of payment by the Insurer.

4. Section V. **GENERAL CONDITIONS AND LIMITATIONS, B. NOTICE,** sub-paragraph 2) is deleted and replace by the following:

2)    If during the Policy Period the Insureds shall become aware of any Wrongful Act which may subsequently give rise to a Claim and shall give written notice to the Insurer as soon as practicable during the Policy Period or Discovery Period (if applicable), then any Claim subsequently made against the Insureds arising out of such Wrongful Act shall be deemed to have been made during the Policy Year in which such written notice was made by the Insured. Such notice must articulate the full particulars as to the nature of the potential Claim, the date of the Wrongful Act, the persons involved and the reasons for anticipating a Claim.

5. Section V. **GENERAL CONDITIONS AND LIMITATIONS, F. CANCELLATION** sub-paragraph 1) is deleted in its entirety and replaced by the following:

A) CANCELLATION OF POLICIES IN EFFECT FOR LESS THAN 90 DAYS
1.    The Insurer may cancel this Policy by mailing or delivering to the Parent Organization and the agent, if any, written notice of cancellation at least:
    a.    10 days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or
    b.    30 days before the effective date of cancellation if the Insurer cancels for any other reason.
2.    The Insurer will mail or deliver notice to the Parent Organization's and agent's last known address.

CIRI 70003 SC (08/98)                                                                                      Page 2 of 4

SPECIMEN

B) CANCELLATION OF POLICIES IN EFFECT FOR 90 DAYS OR MORE
If this Policy has been in effect for 90 days or more, or is a renewal or continuation of a Policy the Insurer issued, the Insurer may cancel this Policy only for one or more of the following reasons:

1. Nonpayment of premium;

2. Material misrepresentation of fact which, if known to the Insurer, would have caused the Insurer not to issue the Policy;

3. Substantial change in the risk assumed, except to the extent that the Insurer should reasonably have foreseen the change or contemplated the risk in writing the Policy;

4. Substantial breaches of contractual duties, conditions or warranties; or

5. Loss of the Insurer's reinsurance covering all or a significant portion of the particular Policy insured, or where continuation of the Policy would imperil the Insurer's solvency or place the Insurer in violation of the insurance laws of South Carolina.

   Prior to cancellation for reasons permitted in this item 5., the Insurer will notify the Commissioner, in writing, at least sixty days prior to such cancellation and the Commissioner will, within thirty days of such notification, approve or disapprove such action.

C) The Insurer will mail or deliver notice to the Parent Organization's last mailing address known to the Insurer and the mailing of such notice will be sufficient proof of notice. The Insurer will also mail or deliver notice to the agent's last mailing address know to the Insurer. Delivery of such notice is the same as mailing. Any notice of cancellation will state the effective date of cancellation and the Policy period will end on that date.

D) If this Policy is canceled, the Insurer will send the Parent Organization any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Parent Organization cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or not offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

   Any notice of cancellation will state the precise reason for cancellation.

6. The phrase "the Policy Period" in **ITEM 3. LIMIT OF LIABILITY** of the Declarations is deleted and replaced by the phrase "a Policy Year":

CIRI 70003 SC (08/98)                                                          Page 3 of 4

SPECIMEN

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on **February 7, 2007**, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____

Authorized Representative

CIRI 70003 SC (08/98)                                    Page 4 of 4

SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America        POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

## NON-PROFIT CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:
Non-Profit Management and Organization Liability Insurance Policy

In consideration of the payment of the premium:

1.     Section I. INSURING AGREEMENTS A. Liability Coverage is deleted in its entirety and replaced by the following:

       A.  The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

2.     Section II. DEFINITIONS B. "Claim" sub-paragraph 1) is deleted in its entirety and replaced by the following:

       1)  a written demand for monetary or non-monetary relief;

3.     Section II. DEFINITIONS J. "Loss" is deleted in its entirety and replaced by the following:

       J)  Loss means the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and Defense Costs.  Loss does not include (1) the multiple portion of any multiple damage award, (2) criminal or civil fines or penalties imposed by law, (3) taxes, (4) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed.

4.     Section IV. EXCLUSIONS 6) is deleted in its entirety.

5.     Section IV. EXCLUSIONS 9) is deleted in its entirety and replaced by the following:

       9)  for liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; provided however, this exclusion shall not apply to (a) the Insurer's duty to defend and to pay Defense Costs regarding such Claim; (b) the extent the Insured would have been liable in the absence of such contract or agreement; or (c) the extent the Claim is a Claim for Wrongful Employment Practices;

CIRI 70004 (04-00)                                                            Page 1 of 2

6.  The Insurer shall not be liable to make any payment for Loss, other than **Defense Costs**, in connection with any **Claim** made against any of the **Insureds** which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodations under, or otherwise comply with, the Americans with Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any related or similar law or regulation.

7.  Section V. GENERAL CONDITIONS AND LIMITATIONS, B. NOTICE, sub-paragraph 1) is deleted in its entirety and replaced by the following:

     1)  If during the **Policy Period or Discovery Period**, if purchased, any **Claim is** first made against any **Insured**, the **Insureds** as a condition precedent to their right to be reimbursed under this Policy, shall give to the Insurer written notice of any such **Claim** as soon as practicable. The **Insured** shall give the Insurer such information and cooperation as it may reasonably require.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on **February 7, 2007**, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by:   _____
               On behalf of the entity named in
               ITEM 1 of the Declarations.

               _____
               Authorized Company Representative

SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### AMENDED BI/PD EXCLUSION

In consideration of the payment of the premium:

1.      Section IV. **EXCLUSIONS** l) is deleted and replaced by the following:

l)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, provided, that this exclusion shall not apply to allegations of mental anguish or emotional distress if and only to the extent that such allegations are made as part of a **Claim for Wrongful Employment Practices**;

2.      Section IV. **EXCLUSIONS** is amended by adding the following exclusion:

for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation, construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot, or the supervision of actual construction, manufacturing or assembly of any tangible property;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on   **February 7, 2007**  , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:      _____
                On behalf of the entity named in
                ITEM 1 of the Declarations.


                _____
                Authorized Company Representative

CIRI-70007 (02-02)

### SPECIMEN

ISSUED BY: Travelers Casualty and Surety Company of America        POLICY NO:    103593099

ISSUED TO: HYPERION TOWERS HOMEOWNERS ASSOCIATION, INC.

<u>NUCLEAR BROAD FORM EXCLUSION</u>

This endorsement modifies insurance provided under the following:
Non-Profit Management and Organization Liability Insurance Policy

A.    This Policy does not apply:

    1.    To Loss

        a.    with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        b.    resulting from the Hazardous Properties of Nuclear Material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any Agency thereof with any person organization; or

    2.    To Loss resulting from the Hazardous Properties of Nuclear Material, if

        a.    the Nuclear Material (i) is at any Nuclear Facility owned by, or operated by or on behalf of an Insured (ii) has been discharged or dispersed therefrom;

        b.    the Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        c.    the Loss arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such Nuclear Facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to Loss to such Nuclear Facility and any property thereat.

B.    As used in this Endorsement:

    1.    "Hazardous Properties" include radioactive, toxic or explosive properties.

    2.    "Nuclear Material" means Source Material, Special Nuclear Material or Byproduct Material.

    3.    "Source Material," "Special Nuclear Material" and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

72047 (08-1996)                                                                 Page 1 of 2

SPECIMEN

4.    "Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

5.    "Waste" means any waste material (a) containing Byproduct Material other than the tailing or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content and (b) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of Nuclear Facility under paragraph (a) or (b) thereof.

6.    "Nuclear Facility" means

    a.    any Nuclear Reactor;

    b.    any equipment or device designed or used for (i)separating the isotopes of uranium or plutonium, (ii) processing or utilizing Spent Fuel, or (iii) handling, processing or packaging Waste;

    c.    any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more that 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    d.    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste and includes the site on which any of the foregoing is located, all operation conducted on such site and all premises used for such operations.

7.    "Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

8.    "Insured" means the Insured Organization and shall also mean the Insured Persons.

9.    "Loss" includes all forms of radioactive contamination of property.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on February 7, 2007, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____
Authorized Representative

SPECIMEN

TRAVELERS

**NON-PROFIT MANAGEMENT AND ORGANIZATION
LIABILITY INSURANCE POLICY**

(Herein, the "Insurer")

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance on all statements made and information furnished to the Insurer, including the statements made in the Application and its attachments and any materials submitted therewith, all of which are made a part hereof, the Insurer and the Insureds agree as follows:

### I. INSURING AGREEMENTS

**Liability Coverage**

A.   The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds and reported in writing to the Insurer during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

**Defense Coverage**

B.   The Insurer shall have the right and duty to defend any Claim covered by this Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon exhaustion of the Limit of Liability set forth in Item 3 of the Declarations.

The Insureds agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a Claim the Insureds will do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

The Insureds agree not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

The Insurer may, with the written consent of the Insureds, make any settlement of a Claim it deems expedient. If the Insureds withhold consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Defense Costs accrued as of the date such settlement was proposed in writing by the Insurer.

### II. DEFINITIONS

A.   Application means all signed, written applications including any attachments thereto and materials submitted therewith, for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a renewal or replacement, all of which shall be deemed attached hereto and incorporated herein.

B.   Claim means:

1)   a written demand for monetary damages;

2)   a civil proceeding commenced by the service of a complaint or similar pleading;

3)   a criminal proceeding commenced by a return of an indictment; or

4)   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against an Insured for a Wrongful Act, including an appeal therefrom.

C.   Defense Costs means that part of Loss consisting of reasonable costs, charges and expenses (including but not limited to attorney fees) incurred in defending or investigating Claims, including appeals therefrom. Defense Costs does not include salaries, wages, overhead or benefit expenses of any Insured Person.

D.   Discovery Period means either (1) that period described in Section III(C)(1) of this Policy and Item 7 of the Declarations, or (2) that period in which coverage under this policy is extended pursuant to Section V(C) of this Policy.

E.   Financial Insolvency means the status of the Insured Organization as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the Insured Organization, or the Insured Organization becoming a debtor in possession.

F.   Indemnified Loss means (1) Loss which the Insured Organization becomes legally obligated to pay as the result of Claims made against the Insured Organization, and (2) Loss for which the Insured Organization grants indemnification to any Insured Person.

CIRL 72001 (06/98) Page 1 of 6

G. Insured(s) means the Insured Organization and the Insured Persons.

H. Insured Organization means the Parent Organization and its Subsidiaries.

I. Insured Persons means any persons who were, now are, or shall become: (1) duly elected or appointed directors, trustees or officers of any Insured Organization; or (2) employees, members of duly constituted committees or volunteers of any Insured Organization that is a non-profit entity.

J. Loss means the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages, judgments, settlements and Defense Costs. Loss does not include (1) punitive or exemplary damages, (2) the multiple portion of any multiple damage award, (3) criminal or civil fines or penalties imposed by law, (4) taxes, (5) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (6) matters uninsurable under the law pursuant to which this Policy is construed.

K. Non-Indemnified Loss means all Loss other than Indemnified Loss.

L. Parent Organization means the organization designated in Item 1 of the Declarations.

M. Policy Inception Date means the date stated in Item 2(a) of the Declarations.

N. Policy Termination Date means the date stated in Item 2(b) of the Declarations or the date of any cancellation or non-renewal of this Policy, whichever is earlier.

O. Policy Period means the period between the Policy Inception Date and the Policy Termination Date.

P. Pollutants means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include, but not be limited to, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. Pollutants shall also mean any other air emissions, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, electric or magnetic or electromagnetic fields and any noise.

Q. Related Wrongful Acts means Wrongful Acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

R. Subsidiary means:

CIRI 72001 (06/98) Page 2 of 6

1) any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, had on or prior to the Policy Inception Date the ability to control or direct its managerial decisions or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws;

2) any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, acquires by purchase, creation or otherwise during the Policy Period the ability to control or direct its managerial decisions, or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws.

If the annual revenues for the most recent fiscal year of any non-profit entity described in paragraph 2) above exceed 20% of the consolidated revenues for the most recent fiscal year of the Parent Organization and its Subsidiaries, the Parent Organization shall give written notice of such acquisition to the Insurer as soon as practicable, but in no event later than 90 (90) days after the effective date of such acquisition, together with such information as the Insurer may require. This policy shall not afford any coverage with respect to such non-profit entity and its Insured Persons following such ninety (90) day period unless (1) the Insurer in its sole discretion agrees by endorsement to this policy to afford such coverage, and (2) the Insureds pay an additional premium and accept any special policy terms and conditions required by the Insurer.

S. Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

T. Wrongful Employment Practices means any actual or alleged: (1) wrongful dismissal, discharge or termination of employment; (2) employment related misrepresentation; (3) violation of employment laws; (4) sexual or workplace harassment of any kind; (5) employment discrimination; (6) wrongful failure to employ or promote; (7) wrongful discipline; (8) wrongful deprivation of career opportunity including a wrongful failure to hire or promote; (9) failure to grant tenure; (10) negligent employment evaluation; and/or (11)

failure to provide adequate workplace or employment policies and procedures.

### III. EXTENSIONS

A. ESTATES, HEIRS, LEGAL REPRESENTATIVES, ETC.

In the event of the death, incapacity or bankruptcy of any Insured Person, any claim against his or her estate, heirs, legal representatives or assigns based on actual or alleged Wrongful Acts of such Insured Person shall be deemed to be a Claim against such Insured Person for the purposes of this Policy.

B. MARITAL ESTATE

Subject otherwise to the terms hereof, this Policy shall cover Loss arising from any claim made against the lawful spouse (whether such status is derived by reason of statutory, common or other law of any applicable jurisdiction in the world) of an Insured Person

for claims arising solely out of his or her capacity as the spouse of an Insured Person, including such claims that seek damages recoverable from marital community property, property jointly held by the Insured Person and the spouse, or property transferred from the Insured Person to the spouse; provided, however, that this extension shall not afford coverage for any claim for any actual or alleged Wrongful Act of the spouse. All terms, conditions and other provisions of this Policy, inclusive of any provision relative to the applicable Retention, which would be applicable to Loss incurred by the Insured Person in such claim shall also apply to Loss incurred by the spouse in such claim.

## C.  DISCOVERY PERIOD

1)  If the Insurer or the Parent Organization cancels, fails, or refuses to renew this Policy for any reason other than the Insured's non-payment of premium or non-compliance with the terms and conditions of this Policy, then the Parent Organization shall have the right, on payment of the additional premium shown in Item 6 of the Declarations, to an extension of the coverage granted by this Policy for any Claim first made against any Insured during the period specified in Item 7 of the Declarations, but only with respect to any actual or alleged Wrongful Act committed or allegedly committed before the Policy Termination Date.

2)  As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid. The right to purchase the Discovery Period shall terminate unless written notice of the election of the Discovery Period is received by the Insurer by certified mail, prepaid express courier or facsimile within thirty (30) days after the Policy Termination Date, together with full payment of the premium for the Discovery Period. In the event that such notice and premium payment are not so given to the Insurer, there shall be no right to purchase the Discovery Period at any later date.

3)  If the Discovery Period is purchased, the entire premium for the Discovery Period shall be deemed earned at its commencement.

4)  The purchase of the Discovery Period shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

5)  If the coverage extension described in Section V(C) of this Policy is purchased, the Insureds shall not be entitled to also purchase the coverage extension described in this Section III(C).

CIRI 72001 (06/98) Page 3 of 6

## IV. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any of the Insureds:

1)  for:

    (a)  bodily injury, sickness, disease or death of any person, or any damage to or destruction of any tangible property including loss of use thereof; or

    (b)  mental anguish or emotional distress, however this subpart (b) shall not apply with respect to any Claim for Wrongful Employment Practices;

2)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Policy is a renewal or replacement;

3)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving (a) the actual, alleged or threatened discharge, release, escape or disposal of Pollutants into or on real or personal property, water or the atmosphere; or (b) any direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or any voluntary decision to do so; including but not limited to any Claim for financial loss to the Insured Organization, its members or security holders or its creditors based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the matters described in (a) or (b) of this exclusion;

4)  for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of any federal, state or local statutory law or common law upon fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the Insured Organization;

5)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any litigation against any Insured on or prior to the Pending and Prior Litigation Date set forth in Item 9 of the Declarations, or any fact, circumstance or situation underlying or alleged therein;

6)  brought or maintained by or on behalf of the Insured Organization, except a Claim that is brought and maintained totally independently of, and totally without the solicitation, assistance, participation, or intervention of any officer, director or trustee of the Insured Organization;

7)  for Wrongful Acts by any Insured Person as a director, officer or employee of any entity other than the Insured Organization, even if such service is directed or requested by the Insured Organization;

8)  for any Wrongful Act committed or allegedly committed by any Insured Organization or its Insured Persons while such Insured Organization was not a Subsidiary; however, if before or during the Policy Period an organization ceases to be a Subsidiary, coverage with respect to such Subsidiary and its Insured Persons shall continue until termination of this Policy but only with respect to Claims for Wrongful Acts taking place while such organization was a Subsidiary;

53

9) for liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; however, this exclusion shall not apply to the extent (a) the Insured would have been liable in the absence of such contract or agreement; or (b) the Claim is a Claim for Wrongful Employment Practices;

10) brought about or contributed to by any deliberately fraudulent or dishonest act or omission or any purposeful violation of any statute or regulation by such Insured; however, this exclusion shall not apply unless a judgment or other final adjudication adverse to such Insured establishes such a deliberately fraudulent or dishonest act or omission or purposeful violation;

11) for such Insured gaining in fact any profit, remuneration or advantage to which such Insured was not legally entitled; or

12) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the ownership, control, management or operations of any for-profit Subsidiary of the Insured Organization; however, this exclusion shall not apply with respect to any for-profit Subsidiary that is an Insured Organization pursuant to an endorsement to this Policy.

No fact pertaining to or knowledge or information possessed by any Insured Person shall be imputed to any other Insured Person for purposes of applying any Exclusion in Section IV. Only facts pertaining to or knowledge or information possessed by an officer, director or trustee of the Insured Organization shall be imputed to the Insured Organization for purposes of applying any Exclusion in Section IV.

### V. GENERAL CONDITIONS AND LIMITATIONS

A. LIMIT OF LIABILITY AND RETENTION
1) The Insurer shall pay Loss in excess of the applicable Retention set forth in Item 4 of the Declarations up to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations for the Policy Period set forth in Item 2 of the Declarations.

2) Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim.

3) If the Insured Organization is permitted or required by common or statutory law to ultimately indemnify the Insured Persons for any Loss, or to advance Defense Costs on their behalf, and does not in fact do so other than for reasons of Financial Insolvency, then any payment of such Loss or any advancement of such Defense Costs by the Insurer shall not be subject to any Retention amount. In that event, the Insured Organization shall reimburse and hold harmless the Insurer for such Loss up to the Retention amount set forth in Item 4(b) of the Declarations. For purposes of this Section V(A), the resolutions of the Insured Organization shall be deemed to provide indemnification for Loss to the fullest extent permitted by common or statutory law.

4) If Loss resulting from a Claim is subject in part to no Retention and in part to the Retention for Indemnified Loss, the Retention set forth in Item 4(b) of the Declarations shall be applied only to that part of the Loss which is Indemnified Loss.

5) With respect to any Claim, other than a Claim for Wrongful Employment Practices, the applicable Retention shall apply only to Defense Costs, not to any settlement, judgment or other damage.

6) If a Claim, other than a Claim for Wrongful Employment Practices, is fully and finally resolved with prejudice with respect to all Insureds without any Insured becoming legally obligated to pay any judgment, settlement or damages (other than

   Defense Costs) as the result of such Claim, no Retention shall apply with respect to such Defense Costs.

7) Defense Costs shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations, and Defense Costs shall reduce the maximum aggregate Limit of Liability.

8) The amount set forth in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under the Policy for the Policy Period for all Loss resulting from all Claims, regardless of the time of payment by the Insurer.

B. NOTICE

1) If during the Policy Period or Discovery Period, if purchased, any Claim is first made against any Insured, the Insureds as a condition precedent to their right to be reimbursed under this Policy, shall give to the Insurer written notice of any such Claim as soon as practicable but in no event later than thirty (30) days after the expiration date of the Policy or the Discovery Period (if applicable). The Insured shall give the Insurer such information and cooperation as it may reasonably require.

2) If during the Policy Period the Insureds shall become aware of any Wrongful Act which may subsequently give rise to a

CIRI 72001 (06/98)  Page 4 of 6

Claim and shall give written notice to the Insurer as soon as practicable during the Policy Period or Discovery Period (if applicable), then any Claim subsequently made against the Insureds arising out of such Wrongful Act shall be deemed to have been made during the Policy Period. Such notice must articulate the full particulars as to the nature of the potential Claim, the date of the Wrongful Act, the persons involved and the reasons for anticipating a Claim.

3). Notice to the Insurer hereunder shall be addressed as stated in Item 8 of the Declarations. Except as otherwise provided in this Policy, all notices under this Policy shall be in writing and given by mail, prepaid express courier or facsimile properly addressed and shall be effective upon receipt.

C.    ACQUISITION OF PARENT ORGANIZATION

If during the Policy Period (1) the Parent Organization is acquired by merger into or consolidation with another organization, or (2) another organization, or person or group of organizations and/or persons acting in concert acquires the ability to control or direct the Parent Organization's managerial decisions or to select a majority of its trustees or directors, then coverage under this Policy shall continue until termination of the Policy Period, but only with respect to Claims for Wrongful Acts taking place prior to such merger, consolidation or acquisition. Upon the Insurer's receipt from the Insureds of notice of such merger, consolidation or acquisition, the Insurer shall promptly

provide to the Parent Organization alternative quotations for a three-year and six-year extension of coverage (or any lesser periods which the Insureds may request) with respect to Claims for such prior Wrongful Acts. Any coverage extension pursuant to such quotations shall be conditioned upon: (1) the Insureds giving to the Insurer written notice during the Policy Period of their desire to elect such extended coverage, (2) any premium paid or to be paid under this Policy being deemed fully earned upon inception of such coverage extension, (3) payment during the Policy Period by the Insureds of any additional premium required by the Insurer, and (4) the Insureds accepting any additional terms and conditions required by the Insurer.

The purchase of any such coverage extension shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

The Parent Organization shall give written notice of such merger, consolidation or acquisition to the Insurer as soon as practicable together with such information as the Insurer may require.

CIRI 72001 (06/98) Page 5 of 6

D.    SUBROGATION

If any payment is made under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the Insureds' rights of recovery, including without limitation the Insured Persons' rights to indemnification or advancement from the Insured Organization. The Insureds shall execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

E.    AUTHORIZATION AND NOTICES

By acceptance of this Policy, the Insureds agree that the Parent Organization will act on behalf of the Insureds with respect to:

1) the giving of all notices to the Insurer as provided herein,

2) the receiving of all notices from the Insurer,

3) the payment of premiums,

4) the receiving of any return premiums that may become due under this Policy,

5) the cancellation of this Policy, and

6) the negotiation, agreement to and acceptance of any endorsements or additional terms and conditions to this Policy.

F.    CANCELLATION

1) This Policy may be cancelled by the Insurer only for non-payment of premium when due provided the Insurer gives written notice to the Parent Organization stating when, not less than ten (10) days thereafter, such cancellation shall be effective.

2) By acceptance of this Policy, the Insureds grant the exclusive power and authority to cancel this Policy on their behalf to the Parent Organization, which may cancel this Policy by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice, and the effective date of cancellation stated in the notice shall become the Policy Termination Date.

3) If this Policy is cancelled pursuant to Section V(F)(2), the earned premium shall be computed in accordance with the customary short rate table and procedure. If this Policy is cancelled pursuant to Section V(F)(1), the earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

G.    NON-RENEWAL

The Insurer may elect to non-renew this Policy only if it gives written notice of such non-renewal to the Parent Organization at least forty-five (45) days prior to the Policy Termination Date.

H    ACTION AGAINST INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance by the Insureds with all of the terms of this Policy; nor shall any such action lie until the amount of the Insured's obligation to pay shall

have been finally determined either by judgment against an Insured after actual trial or by written agreement of the Insured, the claimant and the Insurer. No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the Insureds to determine the Insurer's liability, nor shall the Insurer be impleaded by the Insureds or their legal representatives.

I.    ACCEPTANCE

By acceptance of this Policy, the Insureds agree that this Policy constitutes the entire agreement existing between them and the Insurer relating to this insurance.

J.    ALTERATION & ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy by an authorized employee or representative of the Insurer.

K.    OTHER INSURANCE

If any Loss otherwise covered under this Policy is insured under any other valid and collectible policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other insurance, whether such other insurance is stated to be primary, contributory excess, contingent or otherwise unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy Number of this Policy.

## VI. WARRANTIES AND COVENANTS

The Insureds warrant and agree as a condition to the Insurer's obligations hereunder, as follows:

1) The statements and representations made in the Application are the Insureds' statements and representations and are true. This Policy is issued in reliance upon the truth of such statements and representations.

2) In the event that any statement or representation in the Application is untrue, this Policy shall be void and of no effect whatsoever, but only with respect to:

(a) any Insured Person who had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed, and

(b) the Insured Organization if the person who signs the Application had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed.

Whether an Insured Person had such knowledge or information shall be determined without regard to whether the Insured Person actually knew the Application contained such untrue statement or representation.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its authorized Company officers at Hartford, CT.

*Thomas M. Kunkel*

Executive Vice President

*[signature]*

Corporate Secretary

CIRI 72001 (06/98)  Page 6 of 6

Exhibit D to Amended Complaint: Auto-Owners Insurance Policy

# *Auto-Owners*

Page    1

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

55039 (11-87)
Issued    03-10-1998
**TAILORED PROTECTION POLICY DECLARATIONS**

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00        UNIT 46

INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  1107 48TH AVE N # 310F

MYRTLE BEACH, SC  29577-5417

Rewrite Effective 02-07-1998

**POLICY NUMBER  912316-36059424-98**

| POLICY TERM |
| --- |
| 12:01 a.m.   12:01 a.m. |
| 02-07-1998 to 02-07-1999 |

---

### COMMON POLICY INFORMATION

**BUSINESS DESCRIPTION:**  Condominium Assoc

**ENTITY:**  Corporation

| | PREMIUM |
| --- | --- |
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | |
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL GENERAL LIABILITY COVERAGE | $1,644.00 |
| TOTAL | $1,644.00 |

**FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)**

Countersigned By: _____

104.143
Policy0254

I certify that this policy was assembled from
available records as a representation of
coverage that was in effect for the policy
period shown.

Date _10 -17-12_

**EXHIBIT**

D

58

# *Auto-Owners*

Page    1

55040 (11/87)
Issued  03-10-1998
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00        UNIT 46

INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  1107 48TH AVE N # 310F

MYRTLE BEACH, SC  29577-5417

Rewrite Effective 02-07-1998

POLICY NUMBER  912316-36059424-98

| POLICY TERM |
| --- |
| 12:01 a.m.   12:01 a.m. |
| 02-07-1998 to 02-07-1999 |

---

## COMMERCIAL GENERAL LIABILITY COVERAGE

**LIMITS OF INSURANCE**

| | |
| --- | --- |
| General Aggregate Limit | $1,000,000 |
| (Other Than Products-Completed Operations) | |
| Products-Completed Operations Aggregate Limit | 1,000,000 |
| Personal And Advertising Injury Limit | 1,000,000 |
| Each Occurrence Limit | 1,000,000 |
| Fire Damage Limit | 50,000 Any One Fire |
| Medical Expense Limit | 5,000 Any One Person |
| Non-Owned Auto Limit Each Occurrence | 1,000,000 |

"General Aggregate Limit" shown above, is reinstated once per policy period at no additional charge, in accordance with form 55050.

**AUDIT TYPE:** Non-Audited

**FORMS THAT APPLY TO LIABILITY:** 55118  (08-91)  59227  (03-92)  55146  (07-96)
55028  (01-88)  55162  (11-95)  IL0021 (11-85)  55029  (07-87)  CG0001 (11-88)
IL0249 (06-89)  55137  (06-92)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)
CL175  (02-86)  55069  (01-88)  CG2147 (09-89)

**LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY**

LOC 001  BLDG 001 5508 N Ocean Blvd
             N Myrtle Beach, SC  29582

**TERRITORY:**  001   **COUNTY:**  Horry

| Classification | Subline | Premium Basis | | Rates | Premium |
| --- | --- | --- | --- | --- | --- |
| **CODE 04001**<br>Non Owned/Hired Auto Liability | Auto | 1-25 Emp<br>Flat Charge | | | $47.00 |
| **CODE 48925**<br>Swimming Pools Noc--Including<br>Products And/Or Completed<br>Operations | Prem/Op | Pools | 1 | 387.188 | $387.00 |
| **CODE 62003**<br>Condominiums - Residential -<br>(Association Risk Only)<br>Including Products And/Or<br>Completed Operations | Prem/Op | Units | 38 | Each    1<br>31.844 | $1,210.00 |

104.143
Policy0255

LOCATION  001  PREMIUM                     $1,644.00

59

Agency Code 16-0604-00                    Policy Number 912316-36059424

CL 175 (2-86)

# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART

### READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (either CG 00 01 or CG 00 02), Common Policy Conditions and Endorsements, if applicable. Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

**DECLARATIONS**
    Named Insured and Mailing Address
    Policy Period
    Description of Business and Location of Premises
    Limits of Insurance
    Forms and Endorsements applying to the Coverage Part at time of issue

**COVERAGE FORM (CG 00 01 or CG 00 02)**
    SECTION I—COVERAGES
        Coverage A—Bodily Injury and Property Damage Liability
            Insuring Agreement
            Exclusions
        Coverage B—Personal and Advertising Injury Liability
            Insuring Agreement
            Exclusions
        Coverage C—Medical Payments
            Insuring Agreement
            Exclusions
        Supplementary Payments
    SECTION II—WHO IS AN INSURED
    SECTION III—LIMITS OF INSURANCE
    SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS
        Bankruptcy
        Duties in the Event of Occurrence, Claim or Suit
        Legal Action Against Us
        Other Insurance
        Premium Audit
        Representations
        Separation of Insureds
        Transfer of Rights of Recovery Against Others to Us
        When We Do Not Renew (applicable to CG 00 02 only)
        Your Right to Claim and "Occurrence" Information (applicable to CG 00 02 only)
    SECTION V—EXTENDED REPORTING PERIODS (applicable to CG 00 02 only)
    SECTION VI—DEFINITIONS (SECTION V IN CG 00 01)

**COMMON POLICY CONDITIONS (IL 00 17)**
    Cancellation
    Changes
    Examination of Your Books and Records
    Inspections and Surveys
    Premiums
    Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

104.143
Policy0256

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986.

Agency Code 16-0604-00                                    Policy Number 912316-36059424

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.    55146 (7-96)

## UPSET AND OVERSPRAY COVERAGE

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed the coverage for "property damage" liability with respect to your operations is extended as follows:

1.  **COVERAGE**

    We will pay those sums which you become legally obligated to pay for "property damage" caused directly by immediate, abrupt and accidental:

    a.  upset, overturn or collision of your "mobile equipment" while transporting; or

    b.  "overspray" during your application or dispersal of;

    "pollutants" which are intended for and normally used in your operations. The operations must be in compliance with local, state, and federal ordinances and laws.

    This is not an additional amount of insurance and does not increase the LIMITS OF INSURANCE stated in the Declarations.

2.  **EXCLUSIONS**

    a.  With regard only to the coverage provided by this endorsement, SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. is deleted and replaced by the following:

        f.  Any loss, cost or expense arising out of any:

            (1) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

            (2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

    b.  The following exclusion is added under SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:

        o.  This coverage does not apply to "overspray" resulting from aerial application or dispersal of "pollutants".

    All other policy exclusions apply.

3.  **DEDUCTIBLE**

    Any deductible provision of the policy which is applicable to Property Damage Liability coverage applies to this coverage extension.

4.  **DEFINITIONS**

    The following definitions apply in addition to those in the policy.

    "Overspray" means spray, from a device specifically designed for spray application or dispersal, that goes beyond the entire area of intended application or dispersal.

    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

104.143
Policy0257

Agency Code 16-0604-00                                    Policy Number 912316-36059424

55162 (11-95)
COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONDOMINIUM UNIT OWNERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

2. The following is added to **LIMITS OF INSURANCE** (Section III):

   8. The limits of liability for the additional insured are those specified in the written contract or agreement between the Insured and the condominium unit owner, not to exceed the limits provided in this policy. These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

104.143
Policy0258

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1984

Agency Code 16-0604-00                          Policy Number 912316-36059424

# COMMUNICABLE DISEASE EXCLUSION
### Commercial General Liability Coverage Form

55137 (6-92)

It is agreed:

1.  The following exclusion is added and applies to:

    a.   COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY;

    b.   COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY; and

    c.   COVERAGE C. MEDICAL PAYMENTS.

2.  **EXCLUSION**

    This policy does not apply to "bodily injury", "personal injury" or medical expenses for "bodily injury" arising out of or resulting from the transmission of any communicable disease by any "insured".

All other policy terms and conditions apply.

Agency Code 16-0604-00                              Policy Number 912316-36059424

CG 21 47 09 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The following exclusion is added to COVERAGE A (Section I):

   o. "Bodily injury" arising out of any:

      (1) Refusal to employ;

      (2) Termination of employment;

      (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

      (4) Consequential "bodily injury" as a result of (1) through (3) above.

   This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

2. The following exclusion is added to COVERAGE B (Section I):

   c. "Personal injury" arising out of any:

      (1) Refusal to employ;

      (2) Termination of employment;

      (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

      (4) Consequential "personal injury" as a result of (1) through (3) above.



104.143
Policy0260

Copyright, Insurance Services Office, Inc., 1988

Agency Code 16-0604-00                    Policy Number 912316-36059424

CG 00 01 11 88

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning.  Refer to DEFINITIONS (SECTION V).

## SECTION I—COVERAGES

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement.**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

      (1)  The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

   b.  This insurance applies to "bodily injury" and "property damage" only if:

      (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2)  The "bodily injury" or "property damage" occurs during the policy period.

   c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2.  **Exclusions.**

   This insurance does not apply to:

   a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b.  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

      (1)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2)  That the insured would have in the absence of the contract or agreement.

   c.  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1)  Causing or contributing to the intoxication of any person;

      (2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d.  Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Copyright, Insurance Services Office, Inc., 19  104.143
                                               Policy0261

Page 1 of 10

65

Agency Code 16-0604-00                                      Policy Number 912316-36059424

e.   "Bodily injury" to:

   (1)   An employee of the insured arising out of and in the course of employment by the insured; or

   (2)   The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

   (1)   Whether the insured may be liable as an employer or in any other capacity; and

   (2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f.   (1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   (b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

      (i)   if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

      (ii)   if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

   (2)   Any loss, cost or expense arising out of any:

   (a)   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b)   Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

g.   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading and unloading".

This exclusion does not apply to:

   (1)   A watercraft while ashore on premises you own or rent;

   (2)   A watercraft you do not own that is:

      (a)   Less than 26 feet long; and

      (b)   Not being used to carry persons or property for a charge;

   (3)   Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

   (4)   Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

   (5)   "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V.8.).

Copyright, Insurance Services Office, Inc., 1982,                           Page 2 of 10

104.143
Policy0262

Agency Code 16-0604-00                                    Policy Number 912316-36059424

h. "Bodily injury" or "property damage" arising out of:

   (1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   (2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. "Property damage" to:

   (1) Property you own, rent or occupy;

   (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

   (3) Property loaned to you;

   (4) Personal property in the care, custody or control of the insured;

   (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   (1) "Your product";

   (2) "Your work"; or

   (3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless ex-

Copyright, Insurance Services Office, Inc., 1982    104.143                Page 3 of 10

67

Agency Code 16-0604-00                          Policy Number 912316-36059424

plicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

**b.** This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**b.** "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement.**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS—COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Li-

Copyright, Insurance Services Office, Inc.,    104.143
Policy0264

Page 4 of 10

Agency Code 16-0604-00                                        Policy Number 912316-36059424

ability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II—WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

      (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury', or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

      (2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

      (3) "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

   b. Any person (other than your employee), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-employee of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership of joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an

Copyright, Insurance Services Office, Inc., 1982, 1

104.143
Policy0265

Agency Code 16-0604-00                                    Policy Number 912316-36059424

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds,

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5, above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Copyright, Insurance Services Office, Inc., 1          Page 6 of 10

104.143
Policy0266

70

Agency Code 16-0604-00

Policy Number 912316-36059424

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

**a.** Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b.** Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are. due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this

Copyright, Insurance Services Office, Inc., 198

104.143
Policy0267

Page 7 of 10

Agency Code 16-0604-00

Policy Number 912316-36059424

Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V—DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

6. "Insured contract" means:

a. A lease of premises;

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and af-

Copyright, Insurance Services Office, Inc., 1982

Page 8 of 10

104.143
Policy0268

Agency Code 16-0604-00                              Policy Number 912316-36059424

fecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(1)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    **(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**c.** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

**d.** That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

**7.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft orl "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**8.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise and lower workers;

**f.** Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing;

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**9.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**10.** "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

J04 143
6269

Copyright, Insurance Services Office, Inc., 1982, 1988                    Page 9 of 10

Agency Code 16-0604-00                                    Policy Number 912316-36059424

e. Oral or written publication of material that violates a person's right of privacy.

**11. a.** "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned.

**b.** "Your work" will be deemed completed at the earliest of the following times:

    (1) When all of the work called for in your contract has been completed.

    (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**c.** This hazard does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials;

    (3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

**12.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed

to occur at the time of the "occurrence" that caused it.

**13.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**14.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1) You;

    (2) Others trading under your name; or

    (3) A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**15.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

104.143
Policy0270

Copyright, Insurance Services Office, Inc., 1982, 1988                Page 10 of 10

Agency Code 16-0604-00                                    Policy Number 912316-36059424

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 55118 (8-91)

## POLLUTION EXCLUSION ENDORSEMENT
## PERSONAL INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS, exclusion c. is added:

c.  (1)  "Personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)  if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "personal injury" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

104.143
Policy0271

Includes copyrighted material of Insurance Services
Office, Inc., with its permission
Copyright, Insurance Services Office, 1982, 1988

75

Agency Code 16-0604-00                              Policy Number 912316-36059424

55029 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

No coverage is provided by this policy for any claim, suit, action or proceeding against the insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos related particle, dust, irritant, contaminant, pollutant, toxic element or material.

55050 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REINSTATEMENT OF THE GENERAL AGGREGATE LIMIT

It is agreed:

The following is added to SECTION III - LIMITS OF INSURANCE:

If the General Aggregate limit is exhausted, as a result of losses occurring during the policy period because of payment of judgments or settlements, we will reinstate that aggregate limit for losses occurring during the same policy period.  We will reinstate such limit only once for each policy period.  Further, our liability:

1.   with respect to any one occurrence, shall never exceed the aggregate limit; or

2.   with respect to all occurrences during the policy period, shall never exceed two times the aggregate limit.

55064 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOTOR VEHICLE LAWS

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS:

We will provide coverage:

1.   up to the minimum required limits; and
2.   subject to all the terms and conditions of the policy;

to comply with any motor vehicle insurance law to the extent such law applies to the "mobile equipment" covered by this coverage part.

All other terms and conditions of the policy apply.

104.143
Policy0272

Agency Code 16-0604-00                           Policy Number 912316-36059424

55069 (1-88)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## CONTRACTUAL COVERAGE AMENDATORY
## ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM.**

It is agreed:

Under Section I - COVERAGE A, Item 2 Exclusions:

Exclusion b. is deleted and replaced by the following:

b.   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1)   Assumed in a contract or agreement that is an "insured contract". However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

    (2)   That the insured would have in the absence of the contract or agreement.

All other terms and conditions of the policy apply.

104.143
Policy0273

Agency Code 16-0604-00                              Policy Number 912316-36059424

55028 (1-88)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NON-OWNED AUTO LIABILITY ENDORSEMENT

### (Employer's Non-Ownership and Hired Auto Liability)

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE FORM).**

It is agreed the coverage for "bodily injury" and "property damage" liability provided under Coverage A is extended as follows:

**COVERAGE**

**INSURING AGREEMENT**

We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto" you do not own or which is not registered in your name which is used in your business.

**EXCLUSIONS**

With respect to this endorsement, the exclusions which apply to Coverage A, other than exclusions a., d., e., f. and i. and the Nuclear Energy Liability Exclusion, are replaced by the following:

This coverage does not apply to:

1.  Liability assumed by the insured under any contract or agreement.

2.  "Property damage" to:

    a.  Property owned or being transported by, or rented or loaned to the insured; or
    b.  Property in the care, custody or control of the insured;

    other than property damage to a residence or a private garage by a private passenger automobile covered by this coverage.

**WHO IS INSURED** (Section II) is replaced by the following:

Each of the following is an insured with respect to this coverage:

1.  You;
2.  Any partner or executive officer of yours; and
3.  Any person using the "auto" and any person or organization legally responsible for the use of an "auto" not owned by such person or organization, provided the actual use is with your permission.

None of the following is an insured:

1.  Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment.

2.  Any person using the "auto" and any person other than you, legally responsible for its use with respect to an "auto" owned or registered in the name of:

    a.  Such person; or
    b.  Any partner or executive officer of yours or a member of his or her household; or
    c.  Any employee or agent of yours who is granted an operating allowance of any sort for the use of such "auto".

3.  Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate.

104.143
Policy0274

Page 1 of 2

Agency Code 16-0604-00                              Policy Number 912316-36059424

4.  The owner or lessee (of whom you are a sublessee) of a hired "auto" or the owner of an "auto" you do not own or which is not registered in your name which is used in your business or any agent or employee of any such owner or lessee.

5.  Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## ADDITIONAL DEFINITIONS

The following definitions apply to this coverage:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

## LIMITS OF INSURANCE

It is agreed with respect to the coverage provided by this endorsement:

SECTION III - LIMITS OF INSURANCE is replaced by the following:

## SECTION III — LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a.  insureds;
   b.  claims made or "suits" brought; or
   c.  persons or organizations making claims or bringing "suits".

2.  If the Limits of Insurance shown in the Declarations:

   a.  is shown only as an Each Occurrence Limit, the Each Occurrence Limit is:

      the most we will pay for; and
      applies to;

      the sum of damages under Coverage A for "bodily injury" and "property damage" arising out of any one "occurrence"; or

   b.  is shown in the Declarations as an Each Person Limit and an Each Occurrence Limit:

      the Each Person Limit is the most we will pay under Coverage A for "bodily injury" sustained by any one person; and

      the Each Occurrence Limit:

         is the most we will pay for; and
         applies separately to 1) and 2);
         1)  damages covered under Coverage A for "bodily injury"; and
         2)  damages covered under Coverage A for "property damage".

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

All other terms and conditions of the policy apply.

Agency Code 16-0604-00                                  Policy Number 912316-36059424

---

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United State of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

IL 00 21 11 85              Copyright, Insurance Services Office, Inc., 1983, 1984              Page 1 of 2

104.143
Policy0276

Agency Code 16-0604-00                    Policy Number 912316-36059424

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a)  Any "nuclear reactor;"

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

IL 00 21 11 85          Copyright, Insurance Services Office, Inc., 1983, 1984          Page 2 of 2

104.143
Policy0277

Agency Code 16-0604-00    Policy Number 912316-36059424

# COMMON POLICY CONDITIONS

IL 00 17 11 85

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATIONS OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

104.143
Policy0278

Copyright, Insurance Services Office, 1982, 1983

Agency Code 16-0604-00                     Policy Number 912316-36059424

IL 02 49 06 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES -
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETE OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs 2. and 3. of CANCELLATION Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

**B.** The following is added to the CANCELLATION Common Policy Condition:

**7.** CANCELLATION OF POLICIES IN EFFECT FOR 90 DAYS OR MORE

If this policy has been in effect for 90 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

**c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

**d.** Substantial breaches of contractual duties, conditions or warranties; or

**e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

Prior to cancellation for reasons permitted in this item e., we will notify the Commissioner, in writing, at least sixty days prior to such cancellation and the Commissioner will, within thirty days of such notification, approve or disapprove such action.

Any notice of cancellation will state the precise reason for cancellation.

**C.** The following is added and supersedes any provisions to the contrary.

**NONRENEWAL**

**1.** if we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, at least 30 days before:

**a.** The expiration date of this policy, if the policy is written for a term of one year or less; or

**b.** An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

Copyright, Insurance Services Office, Inc., 1986, 198
Copyright, ISO Commercial Risk Services, Inc., 1986,   104.143
Policy0279                    Page 1 of 2

Policy Number 912316-36059424

However, we will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Any notice of nonrenewal will state the precise reason for nonrenewal.

104.143
Policy0280

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO Commercial Risk Services, Inc., 1986, 1989                    Page 1 of 2

Agency Code 16-0604-00                                          Policy Number 912316-36059424

---

## NOTICE OF COVERAGE LIMITATION
### Pollution Liability

59227 (3-92)

Dear Policyholder:

Effective with this renewal, your policy provides no coverage for personal injury caused by or resulting from pollutants or pollution. Carefully review your policy. If you have any questions concerning this limitation of coverage, please contact your agent.

AUTO-OWNERS INSURANCE GROUP

104.143
Policy0281

AGENCY ＠＠＠＠＠＠＠＠＠        POLICY ＃＃＃＃＃＃＃＃＃＃＃＃＃＃        13271 (3-95)
                        ！！ ＠＠
＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃
！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！
＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠

＃＃＃＃＃＃＃＃＃

                        BOX 30660, LANSING, MICHIGAN 48909-8160  •  517/323-1200
                        AUTO-OWNERS INSURANCE COMPANY
                        AUTO-OWNERS LIFE INSURANCE COMPANY
                        HOME-OWNERS INSURANCE COMPANY
                        OWNERS INSURANCE COMPANY
                        PROPERTY-OWNERS INSURANCE COMPANY
                        SOUTHERN-OWNERS INSURANCE COMPANY

！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！
＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠
＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃
！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！！
＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠＠
＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃＃

Thank you for allowing Auto-Owners to handle your insurance needs.

Auto-Owners Insurance Group is financially sound with sufficient reserves to be ranked among the leaders in the in-
dustry for financial security.  Our A++ (Superior) rating by the A.M. Best Company signifies that we have the finan-
cial strength to provide the insurance protection you need.

Feel free to contact your Auto-Owners agency with any questions you may have about your insurance needs.

Your agency's phone number is ！！！！！！！！！！！！！.

Auto-Owners Insurance - The "No Problem" People[®]

⌐ *Serving Our Policyholders and Agents for More Than 85 Years* ⌐

104.143
Policy0282

86



*Owners Insurance*
Home Car Business
The 'No Problem' People®

# *Tailored Protection*
# *Insurance Policy*

*Auto-Owners Insurance Company*

# *Auto-Owners*

Page   1

(IL 1201 11-85)
Issued  11-05-1998

INSURANCE COMPANY

**TAILORED PROTECTION POLICY DECLARATIONS**

6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Change Endorsement Effective 10-23-1998

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00        UNIT 46

**POLICY NUMBER   912316-36059424-98**

INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  4605 OLEANDER DR # D

MYRTLE BEACH, SC  29577-5739

```
POLICY TERM
12:01 a.m.   12:01 a.m.
02-07-1998  to  02-07-1999
```

DESCRIPTION OF CHANGE

AMENDED MAILING ADDRESS TO THE FOLLOWING

4605 OLEANDER DR #D
MYRTLE BEACH, SC 29577

TRANSACTION NUMBER:  002

104.143
Policy0283

ENDORSEMENT PREMIUM:  NO CHANGE

$.00

I certify that this policy was assembled from
available records as a representation of
coverage that was in effect for the policy
period shown.

Date  10-17-12

88

4:12-cv-03423-RBH    Date Filed 09/23/13    Entry Number 26-4    Page 32 of 96

Appeal: 14-1837    Doc: 14    Filed: 09/26/2014    Pg: 92 of 184

# *Auto-Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Page   1

55039 (11-87)
Issued  01-04-1999
TAILORED PROTECTION POLICY DECLARATIONS

AGENCY  WACCAMAW INSURANCE SERVICES IN
      16-0604-00      UNIT 46
INSURED  HYPERION TOWERS HOA INC
      %PINNACLE REAL ESTTE MGMT

ADDRESS  4605 OLEANDER DR # D

      MYRTLE BEACH, SC  29577-5739

Renewal Effective 02-07-1999

POLICY NUMBER  912316-36059424-99

| POLICY TERM |
| 12:01 a.m.   12:01 a.m. |
| 02-07-1999 to 02-07-2000 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMON POLICY INFORMATION

**BUSINESS DESCRIPTION:**  Condominium Assoc

**ENTITY:**  Corporation

| | PREMIUM |
|---|---|
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | |
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL GENERAL LIABILITY COVERAGE | $1,644.00 |
| TOTAL | $1,644.00 |

FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
    55000  (01-87)

Countersigned By:  _____

104.143
Policy0284

I certify that this policy was assembled from
available records as a representation of
coverage that was in effect for the policy
period shown

Date  10-17-12

# *Auto-Owners*

Page  1

55040 (11/87)
Issued  01-04-1999

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Renewal Effective 02-07-1999

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00      UNIT 46
INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

**POLICY NUMBER  912316-36059424-99**

ADDRESS  4605 OLEANDER DR # D

MYRTLE BEACH, SC  29577-5739

| POLICY TERM |
| --- |
| 12:01 a.m.   12:01 a.m. |
| 02-07-1999 to 02-07-2000 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMERCIAL GENERAL LIABILITY COVERAGE

### LIMITS OF INSURANCE

| | |
| --- | --- |
| General Aggregate Limit | $1,000,000 |
| (Other Than Products-Completed Operations) | |
| Products-Completed Operations Aggregate Limit | 1,000,000 |
| Personal And Advertising Injury Limit | 1,000,000 |
| Each Occurrence Limit | 1,000,000 |
| Fire Damage Limit | 50,000 Any One Fire |
| Medical Expense Limit | 5,000 Any One Person |
| Non-Owned Auto Limit Each Occurrence | 1,000,000 |

"General Aggregate Limit" shown above, is reinstated once per policy period at no
additional charge, in accordance with form 55050.

### AUDIT TYPE: Non-Audited

FORMS THAT APPLY TO LIABILITY: 55118  (08-91)  55146  (07-96)  55028  (01-88)
55162  (11-95)  IL0021 (11-85)  55029  (07-87)  CG0001 (11-88)  IL0249 (06-89)
55137  (06-92)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG2147 (09-89)

### LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 001  BLDG 001 5508 N Ocean Blvd
N Myrtle Beach, SC  29582

TERRITORY:  001   COUNTY:  Horry

| Classification | Subline | Premium Basis | | Rates | Premium |
| --- | --- | --- | --- | --- | --- |
| **CODE** 04001<br>Non Owned/Hired Auto Liability | Auto | 1-25 Emp<br>Flat Charge | | | $47.00 |
| **CODE** 48925<br>Swimming Pools Noc--Including<br>Products And/Or Completed<br>Operations | Prem/Op | Pools | 1 | 387.188 | $387.00 |
| **CODE** 62003<br>Condominiums - Residential -<br>(Association Risk Only)<br>Including Products And/Or<br>Completed Operations | Prem/Op | Units | 38 | Each  1<br>31.844 | $1,210.00 |

104.143
Policy0285

LOCATION  001  PREMIUM                    $1,644.00

Agency Code 16-0604-00                        Policy Number 912316-36059424

CL 175 (2-86)

# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART

### READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (either CG 00 01 or CG 00 02), Common Policy Conditions and Endorsements, if applicable. Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

**DECLARATIONS**
    Named Insured and Mailing Address
    Policy Period
    Description of Business and Location of Premises
    Limits of Insurance
    Forms and Endorsements applying to the Coverage Part at time of issue

**COVERAGE FORM (CG 00 01 or CG 00 02)**
    SECTION I—COVERAGES
        Coverage A—Bodily Injury and Property Damage Liability
            Insuring Agreement
            Exclusions
        Coverage B—Personal and Advertising Injury Liability
            Insuring Agreement
            Exclusions
        Coverage C—Medical Payments
            Insuring Agreement
            Exclusions
        Supplementary Payments
    SECTION II—WHO IS AN INSURED
    SECTION III—LIMITS OF INSURANCE
    SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS
        Bankruptcy
        Duties in the Event of Occurrence, Claim or Suit
        Legal Action Against Us
        Other Insurance
        Premium Audit
        Representations
        Separation of Insureds
        Transfer of Rights of Recovery Against Others to Us
        When We Do Not Renew (applicable to CG 00 02 only)
        Your Right to Claim and "Occurrence" Information (applicable to CG 00 02 only)
    SECTION V—EXTENDED REPORTING PERIODS (applicable to CG 00 02 only)
    SECTION VI—DEFINITIONS (SECTION V IN CG 00 01)

**COMMON POLICY CONDITIONS (IL 00 17)**
    Cancellation
    Changes
    Examination of Your Books and Records
    Inspections and Surveys
    Premiums
    Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

104.143
Policy0286

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986.

91

Agency Code 16-0604-00                                      Policy Number 912316-36059424

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.        55146 (7-96)

## UPSET AND OVERSPRAY COVERAGE

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed the coverage for "property damage" liability with respect to your operations is extended as follows:

1. **COVERAGE**

   We will pay those sums which you become legally obligated to pay for "property damage" caused directly by immediate, abrupt and accidental:

   a.   upset, overturn or collision of your "mobile equipment" while transporting; or

   b.   "overspray" during your application or dispersal of;

   "pollutants" which are intended for and normally used in your operations.  The operations must be in compliance with local, state, and federal ordinances and laws.

   This is not an additional amount of insurance and does not increase the LIMITS OF INSURANCE stated in the Declarations.

2. **EXCLUSIONS**

   a.   With regard only to the coverage provided by this endorsement, SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. is deleted and replaced by the following:

   f.   Any loss, cost or expense arising out of any:

   (1)   request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   (2)   claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

   b.   The following exclusion is added under SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:

   o.   This coverage does not apply to "overspray" resulting from aerial application or dispersal of "pollutants".

   All other policy exclusions apply.

3. **DEDUCTIBLE**

   Any deductible provision of the policy which is applicable to Property Damage Liability coverage applies to this coverage extension.

4. **DEFINITIONS**

   The following definitions apply in addition to those in the policy.

   "Overspray" means spray, from a device specifically designed for spray application or dispersal, that goes beyond the entire area of intended application or dispersal.

   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.                    104.143
                                                                Policy0287

Agency Code 16-0604-00                           Policy Number 912316-36059424

---

55162 (11-95)
COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONDOMINIUM UNIT OWNERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

2.  The following is added to **LIMITS OF INSURANCE** (Section III):

    8.  The limits of liability for the additional insured are those specified in the written contract or agreement between the Insured and the condominium unit owner, not to exceed the limits provided in this policy. These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

104.143
Policy0288

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1984

Agency Code 16-0604-00                                    Policy Number 912316-36059424

## COMMUNICABLE DISEASE EXCLUSION
### Commercial General Liability Coverage Form

55137 (6-92)

It is agreed:

1.  The following exclusion is added and applies to:

    a.  COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY;

    b.  COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY; and

    c.  COVERAGE C. MEDICAL PAYMENTS.

2.  **EXCLUSION**

    This policy does not apply to "bodily injury", "personal injury" or medical expenses for "bodily injury" arising out of or resulting from the transmission of any communicable disease by any "insured".

All other policy terms and conditions apply.

104.143
Policy0289

Agency Code 16-0604-00                          Policy Number 912316-36059424

CG 21 47 09 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  The following exclusion is added to COVERAGE A (Section I):

    o.  "Bodily injury" arising out of any:

        (1) Refusal to employ;

        (2) Termination of employment;

        (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

        (4) Consequential "bodily injury" as a result of (1) through (3) above.

        This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

2.  The following exclusion is added to COVERAGE B (Section I):

    c.  "Personal injury" arising out of any:

        (1) Refusal to employ;

        (2) Termination of employment;

        (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

        (4) Consequential "personal injury" as a result of (1) through (3) above.

104.143
Policy0290

Copyright, Insurance Services Office, Inc., 1988

Agency Code 16-0604-00                Policy Number 912316-36059424

CG 00 01 11 88

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I—COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

    c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions.**

    This insurance does not apply to:

    a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2) That the insured would have in the absence of the contract or agreement.

    c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

    d. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Copyright, Insurance Services Office, Inc., 1982, 1988          Page 1 of 10

104.143
Policy0291

Agency Code 16-0604-00                                Policy Number 912316-36059424

e.  "Bodily injury" to:

(1)  An employee of the insured arising out of and in the course of employment by the insured; or

(2)  The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f.  (1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)  if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g.  "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

(a)  Less than 26 feet long; and

(b)  Not being used to carry persons or property for a charge;

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)  "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V.8.).

Copyright, Insurance Services Office, Inc., 198    104.143              Page 2 of 10
                                                   Policy0292

Agency Code 16-0604-00                           Policy Number 912316-36059424

h. "Bodily injury" or "property damage" arising out of:

  (1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

  (2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. "Property damage" to:

  (1) Property you own, rent or occupy;

  (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

  (3) Property loaned to you;

  (4) Personal property in the care, custody or control of the insured;

  (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

  (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

  (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

  (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

  (1) "Your product";

  (2) "Your work"; or

  (3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

  (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

  (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless ex-

Copyright, Insurance Services Office, Inc., 19

104.143
Policy0293

Page 3 of 10

Agency Code 16-0604-00                    Policy Number 912316-36059424

plicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

**b.** This insurance applies to:

  **(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

  **(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

  **(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity;

  **(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

  **(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

  **(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**b.** "Advertising injury" arising out of:

  **(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

  **(2)** The failure of goods, products or services to conform with advertised quality or performance;

  **(3)** The wrong description of the price of goods, products or services; or

  **(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement.**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

  **(1)** On premises you own or rent;

  **(2)** On ways next to premises you own or rent; or

  **(3)** Because of your operations;

provided that:

  **(1)** The accident takes place in the "coverage territory" and during the policy period;

  **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

  **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

  **(1)** First aid at the time of an accident;

  **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

  **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS—COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Li-

Copyright, Insurance Services Office, Inc., 1:   104.143   Page 4 of 10
                                          Policy0294

Agency Code 16-0604-00                                      Policy Number 912316-36059424

ability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II—WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

      (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury', or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

      (2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

      (3) "Property damage" to property owned or occupied or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

   b. Any person (other than your employee), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-employee of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership of joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an

Copyright, Insurance Services Office, Inc., 19    104.143    Page 5 of 10
                                                                    Policy0295

Agency Code 16-0604-00                                    Policy Number 912316-36059424

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds,

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the

policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Copyright, Insurance Services Office, Inc., 1982, 19    104.143
Policy0296                          Page 6 of 10

Agency Code 16-0604-00                                          Policy Number 912316-36059424

3.    **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a.    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.    To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.    **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

a.    Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.    Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2)    That is Fire insurance for premises rented to you; or

(3)    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.    Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5.    **Premium Audit.**

a.    We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.    Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c.    The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6.    **Representations.**

By accepting this policy, you agree:

a.    The statements in the Declarations are accurate and complete;

b.    Those statements are based upon representations you made to us; and

c.    We have issued this policy in reliance upon your representations.

7.    **Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this

Copyright, Insurance Services Office, Inc., 1982     104.143                     Page 7 of 10
                                                      Policy0297

Agency Code 16-0604-00                                Policy Number 912316-36059424

Coverage Part to the first Named Insured, this in-
surance applies:

   **a.** As if each Named Insured were the only Named
Insured; and

   **b.** Separately to each insured against whom claim
is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To
Us.**

If the insured has rights to recover all or part of any
payment we have made under this Coverage Part,
those rights are transferred to us. The insured must
do nothing after loss to impair them. At our request,
the insured will bring "suit" or transfer those rights
to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will
mail or deliver to the first Named Insured shown in
the Declarations written notice of the nonrenewal
not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient
proof of notice.

## SECTION V—DEFINITIONS

**1.** "Advertising injury" means injury arising out of one
or more of the following offenses:

   **a.** Oral or written publication of material that
slanders or libels a person or organization or
disparages a person's or organization's goods,
products or services;

   **b.** Oral or written publication of material that vio-
lates a person's right of privacy;

   **c.** Misappropriation of advertising ideas or style
of doing business; or

   **d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semi-
trailer designed for travel on public roads, including
any attached machinery or equipment. But "auto"
does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or di-
sease sustained by a person, including death re-
sulting from any of these at any one time.

**4.** "Coverage territory" means:

   **a.** The United States of America (including its ter-
ritories and possessions), Puerto Rico and Ca-
nada;

   **b.** International waters or airspace, provided the
injury or damage does not occur in the course
of travel or transportation to or from any place
not included in a. above; or

   **c.** All parts of the world if:

   **(1)** The injury or damage arises out of:

      **(a)** Goods or products made or sold by
you in the territory described in a.
above; or

      **(b)** The activities of a person whose home
is in the territory described in a. above,
but is away for a short time on your
business; and

   **(2)** The insured's responsibility to pay dam-
ages is determined in a "suit" on the mer-
its, in the territory described in a. above or
in a settlement we agree to.

**5.** "Impaired property" means tangible property, other
than "your product" or "your work", that cannot be
used or is less useful because:

   **a.** It incorporates "your product" or "your work"
that is known or thought to be defective, defi-
cient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract
or agreement;

if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal
of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or
agreement.

**6.** "Insured contract" means:

   **a.** A lease of premises;

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in
connection with construction or demolition op-
erations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to in-
demnify a municipality, except in connection
with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement
pertaining to your business (including an in-
demnification of a municipality in connection
with work performed for a municipality) under
which you assume the tort liability of another
party to pay for "bodily injury" or "property
damage" to a third person or organization. Tort
liability means a liability that would be imposed
by law in the absence of any contract or agree-
ment.

An "insured contract" does not include that part of
any contract or agreement:

   **a.** That indemnifies any person or organization for
"bodily injury" or "property damage" arising
out of construction or demolition operations,
within 50 feet of any railroad property and af-

Copyright, Insurance Services Office, Inc., 19·    104.143        Page 8 of 10
                                                   Policy0298

fecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(1)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    **(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**c.** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

**d.** That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

**7.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or| "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**8.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise and lower workers;

**f.** Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing;

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**9.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**10.** "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

104.143
Policy0299

Copyright, Insurance Services Office, Inc., 1982, 1988                    Page 9 of 10

Agency Code 16-0604-00                                    Policy Number 912316-36059424

e.   Oral or written publication of material that violates a person's right of privacy.

11. a.   "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)   Products that are still in your physical possession; or

(2)   Work that has not yet been completed or abandoned.

b.   "Your work" will be deemed completed at the earliest of the following times:

(1)   When all of the work called for in your contract has been completed.

(2)   When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c.   This hazard does not include "bodily injury" or "property damage" arising out of:

(1)   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2)   The existence of tools, uninstalled equipment or abandoned or unused materials;

(3)   Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

12.   "Property damage" means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss shall be deemed

to occur at the time of the "occurrence" that caused it.

13.   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.   An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

14.   "Your product" means:

a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)   You;

(2)   Others trading under your name; or

(3)   A person or organization whose business or assets you have acquired; and

b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b.   The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15.   "Your work" means:

a.   Work or operations performed by you or on your behalf; and

b.   Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.   The providing of or failure to provide warnings or instructions.

104.143
Policy0300

Copyright, Insurance Services Office, Inc., 1982, 1988
Page 10 of 10

Agency Code 16-0604-00                              Policy Number 912316-36059424

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**   55118 (8-91)

# POLLUTION EXCLUSION ENDORSEMENT
## PERSONAL INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under SECTION I – COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS, exclusion c. is added:

**c.** **(1)** "Personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "personal injury" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

104.143
Policy0301

Includes copyrighted material of Insurance Services
Office, Inc., with its permission
Copyright, Insurance Services Office, 1982, 1988

Agency Code 16-0604-00                                    Policy Number 912316-36059424

55029 (7-87)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ABSOLUTE ASBESTOS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

No coverage is provided by this policy for any claim, suit, action or proceeding against the insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos related particle, dust, irritant, contaminant, pollutant, toxic element or material.

55050 (7-87)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REINSTATEMENT OF THE GENERAL AGGREGATE LIMIT

It is agreed:

The following is added to SECTION III - LIMITS OF INSURANCE:

If the General Aggregate limit is exhausted, as a result of losses occurring during the policy period because of payment of judgments or settlements, we will reinstate that aggregate limit for losses occurring during the same policy period. We will reinstate such limit only once for each policy period. Further, our liability:

1.  with respect to any one occurrence, shall never exceed the aggregate limit; or

2.  with respect to all occurrences during the policy period, shall never exceed two times the aggregate limit.

55064 (7-87)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MOTOR VEHICLE LAWS

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS:

We will provide coverage:

1.  up to the minimum required limits; and
2.  subject to all the terms and conditions of the policy;

to comply with any motor vehicle insurance law to the extent such law applies to the "mobile equipment" covered by this coverage part.

All other terms and conditions of the policy apply.

104.143
Policy0302

Agency Code 16-0604-00                          Policy Number 912316-36059424

55069 (1-88)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# CONTRACTUAL COVERAGE AMENDATORY
## ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM.**

It is agreed:

Under Section I - COVERAGE A, Item 2 Exclusions:

Exclusion b. is deleted and replaced by the following:

b.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

   (1)    Assumed in a contract or agreement that is an "insured contract".  However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

   (2)    That the insured would have in the absence of the contract or agreement.

All other terms and conditions of the policy apply.

104.143
Policy0303

108

Agency Code 16-0604-00                                    Policy Number 912316-36059424

55028 (1-88)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NON-OWNED AUTO LIABILITY ENDORSEMENT

### (Employer's Non-Ownership and Hired Auto Liability)

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE FORM).**

It is agreed the coverage for "bodily injury" and "property damage" liability provided under Coverage A is extended as follows:

**COVERAGE**

**INSURING AGREEMENT**

We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto" you do not own or which is not registered in your name which is used in your business.

**EXCLUSIONS**

With respect to this endorsement, the exclusions which apply to Coverage A, other than exclusions a., d., e., f. and i. and the Nuclear Energy Liability Exclusion, are replaced by the following:

This coverage does not apply to:

1.  Liability assumed by the insured under any contract or agreement.

2.  "Property damage" to:

    a.  Property owned or being transported by, or rented or loaned to the insured; or
    b.  Property in the care, custody or control of the insured;

    other than property damage to a residence or a private garage by a private passenger automobile covered by this coverage.

**WHO IS INSURED** (Section II) is replaced by the following:

Each of the following is an insured with respect to this coverage:

1.  You;
2.  Any partner or executive officer of yours; and
3.  Any person using the "auto" and any person or organization legally responsible for the use of an "auto" not owned by such person or organization, provided the actual use is with your permission.

None of the following is an insured:

1.  Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment.

2.  Any person using the "auto" and any person other than you, legally responsible for its use with respect to an "auto" owned or registered in the name of:

    a.  Such person; or
    b.  Any partner or executive officer of yours or a member of his or her household; or
    c.  Any employee or agent of yours who is granted an operating allowance of any sort for the use of such "auto".

3.  Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate.

104.143
Policy0304

Agency Code 16-0604-00                                    Policy Number 912316-36059424

4.  The owner or lessee (of whom you are a sublessee) of a hired "auto" or the owner of an "auto" you do not own or which is not registered in your name which is used in your business or any agent or employee of any such owner or lessee.

5.  Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**ADDITIONAL DEFINITIONS**

The following definitions apply to this coverage:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**LIMITS OF INSURANCE**

It is agreed with respect to the coverage provided by this endorsement:

SECTION III - LIMITS OF INSURANCE is replaced by the following:

**SECTION III — LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  insureds;
    b.  claims made or "suits" brought; or
    c.  persons or organizations making claims or bringing "suits".

2.  If the Limits of Insurance shown in the Declarations:

    a.  is shown only as an Each Occurrence Limit, the Each Occurrence Limit is:

        the most we will pay for; and
        applies to;

        the sum of damages under Coverage A for "bodily injury" and "property damage" arising out of any one "occurrence"; or

    b.  is shown in the Declarations as an Each Person Limit and an Each Occurrence Limit:

        the Each Person Limit is the most we will pay under Coverage A for "bodily injury" sustained by any one person; and

        the Each Occurrence Limit:

            is the most we will pay for; and
            applies separately to 1) and 2);
            1)  damages covered under Coverage A for "bodily injury"; and
            2)  damages covered under Coverage A for "property damage".

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

All other terms and conditions of the policy apply.

104.143
Policy0305

Page 2 of 2

110

Agency Code 16-0604-00                    Policy Number 912316-36059424

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United State of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

IL 00 21 11 85          Copyright, Insurance Services Office, Inc., 1983, 1984          Page 1 of 2

104.143
Policy0306

Agency Code 16-0604-00                                   Policy Number 912316-36059424

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**IL 00 21 11 85**           Copyright, Insurance Services Office, Inc., 1983, 1984          **Page 2 of 2**

104.143
Policy0307

112

Agency Code 16-0604-00                                    Policy Number 912316-36059424

# COMMON POLICY CONDITIONS

IL 00 17 11 85

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATIONS OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

104.143
Policy0308

Copyright, Insurance Services Office, 1982, 1983

113

Agency Code 16-0604-00                          Policy Number 912316-36059424

IL 02 49 06 89

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SOUTH CAROLINA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETE OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs 2. and 3. of CANCELLATION Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

**B.** The following is added to the CANCELLATION Common Policy Condition:

**7.** CANCELLATION OF POLICIES IN EFFECT FOR 90 DAYS OR MORE

If this policy has been in effect for 90 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

**c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

**d.** Substantial breaches of contractual duties, conditions or warranties; or

**e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

Prior to cancellation for reasons permitted in this item e., we will notify the Commissioner, in writing, at least sixty days prior to such cancellation and the Commissioner will, within thirty days of such notification, approve or disapprove such action.

Any notice of cancellation will state the precise reason for cancellation.

**C.** The following is added and supersedes any provisions to the contrary.

**NONRENEWAL**

**1.** if we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, at least 30 days before:

**a.** The expiration date of this policy, if the policy is written for a term of one year or less; or

**b.** An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

Copyright, Insurance Services Office, Inc., 1986,   Policy0309
Copyright, ISO Commercial Risk Services, Inc., 19~~, ~~~~
104.143

'age 1 of 2

However, we will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Any notice of nonrenewal will state the precise reason for nonrenewal.

104.143
Policy0310

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO Commercial Risk Services, Inc., 1986, 1989   Page 1 of 2

AGENCY aaaaaaaaa    POLICY ##############
                                  !! aa
###############################################
!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!
aaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaa

13271 (3-95)

#########

BOX 30660, LANSING, MICHIGAN 48909-8160  •  517/323-1200
AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY

!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!
aaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaa
###################################
!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!
aaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaaa
###################################

Thank you for allowing Auto-Owners to handle your insurance needs.

Auto-Owners Insurance Group is financially sound with sufficient reserves to be ranked among the leaders in the in-
dustry for financial security.  Our A++ (Superior) rating by the A.M. Best Company signifies that we have the finan-
cial strength to provide the insurance protection you need.

Feel free to contact your Auto-Owners agency with any questions you may have about your insurance needs.

Your agency's phone number is !!!!!!!!!!!!!!.

Auto-Owners Insurance - The "No Problem" People®

⌐  Serving Our Policyholders and Agents for More Than 85 Years  ⌐

104.143
Policy0311



*Auto-Owners Insurance*

Life Home Car Business

*The No Problem People®*

# *Tailored Protection Insurance Policy*

*Auto-Owners Insurance Company*

# *Auto-Owners*

Page   1

55039  (11-87)
Issued   02-01-1999
**TAILORED PROTECTION POLICY DECLARATIONS**

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Reissue Effective 02-07-1999

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00      UNIT 46

**POLICY NUMBER   912316-36059424-99**

INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  4605 OLEANDER DR # D

MYRTLE BEACH, SC  29577-5739

| **POLICY TERM** |
| 12:01 a.m.   12:01 a.m. |
| 02-07-1999 to 02-07-2000 |

---

## COMMON POLICY INFORMATION

**BUSINESS DESCRIPTION:**  Condominium Assoc

**ENTITY:**  Corporation

---

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S).          PREMIUM

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

COMMERCIAL GENERAL LIABILITY COVERAGE                          $1,245.00

                                               TOTAL      $1,245.00

---

**FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)**
55000  (01-87)

Countersigned By: _____

104.143
Policy0312

I certify that this policy was assembled from available records as a representation of coverage that was in effect for the policy period shown.

Date _____ 10-17-18

# *Auto-Owners*

Page    1

55040 (11/87)
Issued    02-01-1999

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 02-07-1999

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00        UNIT 46

**POLICY NUMBER  912316-36059424-99**

INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  4605 OLEANDER DR # D

MYRTLE BEACH, SC  29577-5739

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 02-07-1999 | to 02-07-2000 |

---

### COMMERCIAL GENERAL LIABILITY COVERAGE

**LIMITS OF INSURANCE**

| | |
|---|---|
| General Aggregate Limit | $1,000,000 |
| (Other Than Products-Completed Operations) | |
| Products-Completed Operations Aggregate Limit | 1,000,000 |
| Personal And Advertising Injury Limit | 1,000,000 |
| Each Occurrence Limit | 1,000,000 |
| Fire Damage Limit | 50,000 Any One Fire |
| Medical Expense Limit | 5,000 Any One Person |
| Non-Owned Auto Limit Each Occurrence | 1,000,000 |

"General Aggregate Limit" shown above, is reinstated once per policy period at no additional charge, in accordance with form 55050.

AUDIT TYPE: Non-Audited

FORMS THAT APPLY TO LIABILITY: 55118  (08-91)  55146  (07-96)  55028  (01-88)
55162  (11-95)  IL0021 (11-85)  55029  (07-87)  CG0001 (11-88)  IL0249 (06-89)
55137  (06-92)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG2147 (09-89)

**LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY**

LOC 001  BLDG 001 5508 N Ocean Blvd
N Myrtle Beach, SC  29582

**TERRITORY:  001    COUNTY:  Horry**

| Classification | Subline | Premium Basis | | Rates | Premium |
|---|---|---|---|---|---|
| **CODE 04001** Non Owned/Hired Auto Liability | Auto | 1-25 Emp Flat Charge | | | $47.00 |
| **CODE 48925** Swimming Pools Noc--Including Products And/Or Completed Operations | Prem/Op | Pools | 1 | 290.391 | $290.00 |
| **CODE 62003** Condominiums - Residential - (Association Risk Only) Including Products And/Or Completed Operations | Prem/Op | Units | 38 | Each    1 23.883 | $908.00 |

104.143
Policy0313

LOCATION  001  PREMIUM                    $1,245.00

# *Auto-Owners*

Page    1

(IL 1201 11-85)
Issued  06-14-1999

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Change Endorsement Effective 05-19-1999

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00        UNIT 46

**POLICY NUMBER  912316-36059424-99**

INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  4605 OLEANDER DR # D

MYRTLE BEACH, SC  29577-5739

| POLICY TERM |
| --- |
| 12:01 a.m.   12:01 a.m. |
| 02-07-1999 to 02-07-2000 |

---

DESCRIPTION OF CHANGE

AMENDED LOC 1-1 ADDRESS AS FOLLOWS:
5507-5508 N OCEAN BLVD, N MYRTLE BEACH, SC 29582

TRANSACTION NUMBER:  003

ENDORSEMENT PREMIUM:  NO CHANGE                                    $.00

I certify that this policy was assembled from
available records as a representation of
coverage that was in effect for the policy
period shown.

104.143
Policy0314

Date    10-17-12

120

# *Auto-Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Issued   01-21-2000
**TAILORED PROTECTION POLICY DECLARATIONS**

Automatic Renewal Status Effective 01-20-2000

AGENCY  WACCAMAW INSURANCE SERVICES IN
        16-0604-00      UNIT 46
INSURED HYPERION TOWERS HOA INC
        %PINNACLE REAL ESTTE MGMT

ADDRESS 4605 OLEANDER DR # D

        MYRTLE BEACH, SC  29577-5739

**POLICY NUMBER   912316-36059424-99**

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 02-07-1999 to | 02-07-2000 |

---

This Policy Has Been Changed To Automatic Renewal Status
On 01-20-2000 By User EJF4066

104.143
Policy0315

I certify that this policy was assembled from
available records as a representation of
coverage that was in effect for the policy
period shown.

Date   10-17-12

121

4:12-cv-03423-RBH    Date Filed 09/23/13    Entry Number 26-4    Page 65 of 96
Appeal: 14-1837    Doc: 14    Filed: 09/26/2014    Pg: 125 of 184

# *Auto-Owners*

Page    1

55039 (11-87)
Issued  01-24-2000

**TAILORED PROTECTION POLICY DECLARATIONS**

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 02-07-2000

AGENCY   WACCAMAW INSURANCE SERVICES IN
16-0604-00        UNIT 46

**POLICY NUMBER   912316-36059424-00**

INSURED   HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  4605 OLEANDER DR # D

MYRTLE BEACH, SC  29577-5739

| POLICY TERM |
| --- |
| 12:01 a.m.   12:01 a.m.<br>02-07-2000 to 02-07-2001 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMON POLICY INFORMATION

**BUSINESS DESCRIPTION:**  Condominium Assoc

**ENTITY:**  Corporation

| | PREMIUM |
| --- | --- |
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | |
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL GENERAL LIABILITY COVERAGE | $1,245.00 |
| TOTAL | $1,245.00 |

FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
   55000  (01-87)

Countersigned By: _____

104.143
Policy0316

I certify that this policy was assembled from
available records as a representation of
coverage that was in effect for the policy
period shown.

Date  10-17-12

122

# *Auto-Owners*

Page   1

55040 (11/87)
Issued  01-24-2000

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Renewal Effective 02-07-2000

AGENCY  WACCAMAW INSURANCE SERVICES IN
16-0604-00      UNIT 46

**POLICY NUMBER  912316-36059424-00**

INSURED  HYPERION TOWERS HOA INC
%PINNACLE REAL ESTTE MGMT

ADDRESS  4605 OLEANDER DR # D

MYRTLE BEACH, SC  29577-5739

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 02-07-2000 to 02-07-2001 | |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMERCIAL GENERAL LIABILITY COVERAGE

**LIMITS OF INSURANCE**
General Aggregate Limit                                    $1,000,000
  (Other Than Products-Completed Operations)
Products-Completed Operations Aggregate Limit              1,000,000
Personal And Advertising Injury Limit                      1,000,000
Each Occurrence Limit                                      1,000,000
Fire Damage Limit                                             50,000 Any One Fire
Medical Expense Limit                                          5,000 Any One Person
Non-Owned Auto Limit Each Occurrence                       1,000,000

"General Aggregate Limit" shown above, is reinstated once per policy period at no
additional charge, in accordance with form 55050.

  **AUDIT TYPE:** Non-Audited

**FORMS THAT APPLY TO LIABILITY:** 55118  (08-91)  55146  (07-96)  55028  (01-88)
55162  (11-95)  IL0021 (11-85)  55029  (07-87)  CG0001 (11-88)  IL0249 (06-89)
55137  (06-92)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG2147 (09-89)

**LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY**

LOC 001  BLDG 001 5507-5508 Ocean Blvd
                  N Myrtle Beach, SC  29582

**TERRITORY:** 001   **COUNTY:** Horry

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| **CODE** 04001 Non Owned/Hired Auto Liability | Auto | 1-25 Emp Flat Charge | | $47.00 |
| **CODE** 48925 Swimming Pools Noc--Including Products And/Or Completed Operations | Prem/Op | Pools          1 | 290.391 | $290.00 |
| **CODE** 62003 Condominiums - Residential - (Association Risk Only) Including Products And/Or Completed Operations | Prem/Op | Units         38 | Each    1  23.883 | $908.00 |

104.143
Policy0317

LOCATION  001  PREMIUM                         $1,245.00

Agency Code 16-0604-00                                    Policy Number 912316-36059424

CL 175 (2-86)

# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART

### READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (either CG 00 01 or CG 00 02), Common Policy Conditions and Endorsements, if applicable. Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

**DECLARATIONS**
　Named Insured and Mailing Address
　Policy Period
　Description of Business and Location of Premises
　Limits of Insurance
　Forms and Endorsements applying to the Coverage Part at time of issue

**COVERAGE FORM (CG 00 01 or CG 00 02)**
　SECTION I - COVERAGES
　　Coverage A - Bodily Injury and Property Damage Liability
　　　Insuring Agreement
　　　Exclusions
　　Coverage B - Personal and Advertising Injury Liability
　　　Insuring Agreement
　　　Exclusions
　　Coverage C - Medical Payments
　　　Insuring Agreement
　　　Exclusions
　　Supplementary Payments
　SECTION II - WHO IS AN INSURED
　SECTION III - LIMITS OF INSURANCE
　SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS
　　Bankruptcy
　　Duties in the Event of Occurrence, Claim or Suit
　　Legal Action Against Us
　　Other Insurance
　　Premium Audit
　　Representations
　　Separation of Insureds
　　Transfer of Rights of Recovery Against Others to Us
　　When We Do Not Renew (applicable to CG 00 02 only)
　　Your Right to Claim and "Occurrence" Information (applicable to CG 00 02 only)
　SECTION V - EXTENDED REPORTING PERIODS (applicable to CG 00 02 only)
　　SECTION VI - DEFINITIONS (SECTION V IN CG 00 01)

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986.

104.143
Policy0318

Agency Code 16-0604-00

Policy Number 912316-36059424

## COMMON POLICY CONDITIONS (IL 00 17)

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986.

104.143
Policy0319

Agency Code 16-0604-00                    Policy Number 912316-36059424

55162 (11-95)
COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - CONDOMINIUM UNIT OWNERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

2.  The following is added to **LIMITS OF INSURANCE** (Section III):

    8.  The limits of liability for the additional insured are those specified in the written contract or agreement between the Insured and the condominium unit owner, not to exceed the limits provided in this policy. These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission/
Copyright, Insurance Services Office, Inc., 1984


104.143
Policy0320

Agency Code 16-0604-00                                    Policy Number 912316-36059424

## COMMUNICABLE DISEASE EXCLUSION
### Commercial General Liability Coverage Form

55137 (6-92)

It is agreed:

1.  The following exclusion is added and applies to:

    a.  COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY;

    b.  COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY; and

    c.  COVERAGE C. MEDICAL PAYMENTS.

2.  **EXCLUSION**

    This policy does not apply to "bodily injury", "personal injury" or medical expenses for "bodily injury" arising out of or resulting from the transmission of any communicable disease by any "insured".

All other policy terms and conditions apply.

104.143
Policy0321

Agency Code 16-0604-00                    Policy Number 912316-36059424

CG 21 47 09 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The following exclusion is added to COVERAGE A (Section I):

   o. "Bodily injury" arising out of any:

   (1) Refusal to employ;

   (2) Termination of employment;

   (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   (4) Consequential "bodily injury" as a result of (1) through (3) above.

   This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

2. The following exclusion is added to COVERAGE B (Section I):

   c. "Personal injury" arising out of any:

   (1) Refusal to employ;

   (2) Termination of employment;

   (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   (4) Consequential "personal injury" as a result of (1) through (3) above.

Copyright, Insurance Services Office, Inc., 1988

104.143
Policy0322

Agency Code 16-0604-00                                    Policy Number 912316-36059424

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.    55146 (7-96)

# UPSET AND OVERSPRAY COVERAGE

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed the coverage for "property damage" liability with respect to your operations is extended as follows:

1. **COVERAGE**

   We will pay those sums which you become legally obligated to pay for "property damage" caused directly by immediate, abrupt and accidental:

   a.  upset, overturn or collision of your "mobile equipment" while transporting; or

   b.  "overspray" during your application or dispersal of;

   "pollutants" which are intended for and normally used in your operations. The operations must be in compliance with local, state, and federal ordinances and laws.

   This is not an additional amount of insurance and does not increase the LIMITS OF INSURANCE stated in the Declarations.

2. **EXCLUSIONS**

   a.  With regard only to the coverage provided by this endorsement, SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. is deleted and replaced by the following:

      f.  Any loss, cost or expense arising out of any:

         (1)  request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

         (2)  claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

   b.  The following exclusion is added under SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:

      o.  This coverage does not apply to "overspray" resulting from aerial application or dispersal of "pollutants".

   All other policy exclusions apply.

3. **DEDUCTIBLE**

   Any deductible provision of the policy which is applicable to Property Damage Liability coverage applies to this coverage extension.



104.143
Policy0323

129

Agency Code 16-0604-00                              Policy Number 912316-36059424

4.  **DEFINITIONS**

The following definitions apply in addition to those in the policy.

"Overspray" means spray, from a device specifically designed for spray application or dispersal, that goes beyond the entire area of intended application or dispersal.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

104-143
Policy0924

4:12-cv-03423-RBH    Date Filed 09/23/13    Entry Number 26-4    Page 74 of 96
Appeal: 14-1837    Doc: 14    Filed: 09/26/2014    Pg: 134 of 184

CG 00 01 11 88

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I—COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(2)** The "bodily injury" or "property damage" occurs during the policy period.

    **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions.**

    This insurance does not apply to:

    **a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **b.** "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

        **(2)** That the insured would have in the absence of the contract or agreement.

    **c.** "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

        **(1)** Causing or contributing to the intoxication of any person;

        **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

        **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

    **d.** Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Copyright, Insurance Services Office, Inc., 1982     104.143     Page 1 of 10
Policy0325

Agency Code 16-0604-00                                    Policy Number 912316-36059424

e.   "Bodily injury" to:

(1)  An employee of the insured arising out of and in the course of employment by the insured; or

(2)  The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f.   (1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)   if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g.   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

(a)  Less than 26 feet long; and

(b)  Not being used to carry persons or property for a charge;

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)  "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V.8.).

Copyright, Insurance Services Office, Inc., 1982,    104.143    Page 2 of 10
                                                     Policy0326

Agency Code 16-0604-00                                    Policy Number 912316-36059424

h. "Bodily injury" or "property damage" arising out of:

   (1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   (2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. "Property damage" to:

   (1) Property you own, rent or occupy;

   (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

   (3) Property loaned to you;

   (4) Personal property in the care, custody or control of the insured;

   (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   (1) "Your product";

   (2) "Your work"; or

   (3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless ex-

Copyright, Insurance Services Office, Inc., 198                Page 3 of 10

104.143
Policy0327

133

Agency Code 16-0604-00                                          Policy Number 912316-36059424

plicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

**b.** This insurance applies to:

   **(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

   **(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

   **(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity;

   **(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   **(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

   **(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**b.** "Advertising injury" arising out of:

   **(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   **(2)** The failure of goods, products or services to conform with advertised quality or performance;

   **(3)** The wrong description of the price of goods, products or services; or

   **(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement.**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

provided that:

   **(1)** The accident takes place in the "coverage territory" and during the policy period;

   **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

   **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS—COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Li-

Copyright, Insurance Services Office, Inc., 198

Agency Code 16-0604-00

Policy Number 912316-36059424

ability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II—WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

      (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury', or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

      (2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

      (3) "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

   b. Any person (other than your employee), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-employee of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an

Copyright, Insurance Services Office, Inc., 19(    104.143
                                                 Policy0329

Page 5 of 10

Agency Code 16-0604-00    Policy Number 912316-36059424

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds,

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage C;

    b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage A; and

    b. Medical expenses under Coverage C

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5, above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

    Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Claim Or Suit.**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c. You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Copyright, Insurance Services Office, Inc., 198

104.143
Policy0330

Page 6 of 10

Agency Code 16-0604-00                                    Policy Number 912316-36059424

**3.    Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

**a.**    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**    To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.    Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

**a.**    Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b.**    Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)**    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)**    That is Fire insurance for premises rented to you; or

**(3)**    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)**    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.**    Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.    Premium Audit.**

**a.**    We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.**    Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.**    The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.    Representations.**

By accepting this policy, you agree:

**a.**    The statements in the Declarations are accurate and complete;

**b.**    Those statements are based upon representations you made to us; and

**c.**    We have issued this policy in reliance upon your representations.

**7.    Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this

Copyright, Insurance Services Office, Inc., 19f  104.143                    Page 7 of 10
                                                 Policy0331

Agency Code 16-0604-00                                        Policy Number 912316-36059424

Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V—DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in a. above; or

**(b)** The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

**5.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**6.** "Insured contract" means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and af-

Copyright, Insurance Services Office, Inc., 1982,
104.143
Policy0332                                                Page 8 of 10

Agency Code 16-0604-00                                     Policy Number 912316-36059424

fecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(1)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    **(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**c.** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

**d.** That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

**7.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**8.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise and lower workers;

**f.** Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing;

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**9.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**10.** "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

104.143
Policy0333

Copyright, Insurance Services Office, Inc., 1982, 1988
Page 9 of 10

Agency Code 16-0604-00                                    Policy Number 912316-36059424

e.  Oral or written publication of material that violates a person's right of privacy.

11. a.  "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned.

b.  "Your work" will be deemed completed at the earliest of the following times:

(1)  When all of the work called for in your contract has been completed.

(2)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c.  This hazard does not include "bodily injury" or "property damage" arising out of:

(1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2)  The existence of tools, uninstalled equipment or abandoned or unused materials;

(3)  Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

12.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed

to occur at the time of the "occurrence" that caused it.

13.  "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

14.  "Your product" means:

a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)  You;

(2)  Others trading under your name; or

(3)  A person or organization whose business or assets you have acquired; and

b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b.  The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15.  "Your work" means:

a.  Work or operations performed by you or on your behalf; and

b.  Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.  The providing of or failure to provide warnings or instructions.

104.143
Policy0334

Copyright, Insurance Services Office, Inc., 1982, 1988                    Page 10 of 10

Agency Code 16-0604-00                          Policy Number 912316-36059424

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**    55118 (8-91)

# POLLUTION EXCLUSION ENDORSEMENT
# PERSONAL INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS, exclusion c. is added:

c. (1)   "Personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

 (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

 (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

 (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

 (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

  (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

  (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "personal injury" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)   Any loss, cost or expense arising out of any:

 (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

 (b) Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services
Office, Inc., with its permission
Copyright, Insurance Services Office, 1982, 1988

104.143
Policy0335

141

Agency Code 16-0604-00        Policy Number 912316-36059424

55029 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE ASBESTOS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

No coverage is provided by this policy for any claim, suit, action or proceeding against the insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos related particle, dust, irritant, contaminant, pollutant, toxic element or material.

---

55050 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## REINSTATEMENT OF THE GENERAL AGGREGATE LIMIT

It is agreed:

The following is added to SECTION III - LIMITS OF INSURANCE:

If the General Aggregate limit is exhausted, as a result of losses occurring during the policy period because of payment of judgments or settlements, we will reinstate that aggregate limit for losses occurring during the same policy period. We will reinstate such limit only once for each policy period. Further, our liability:

1.  with respect to any one occurrence, shall never exceed the aggregate limit; or

2.  with respect to all occurrences during the policy period, shall never exceed two times the aggregate limit.

---

55064 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOTOR VEHICLE LAWS

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS:

We will provide coverage:

1.  up to the minimum required limits; and
2.  subject to all the terms and conditions of the policy;

to comply with any motor vehicle insurance law to the extent such law applies to the "mobile equipment" covered by this coverage part.

All other terms and conditions of the policy apply.

104.143
Policy0336

Agency Code 16-0604-00

Policy Number 912316-36059424

55069 (1-88)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# CONTRACTUAL COVERAGE AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM.**

It is agreed:

Under Section I - COVERAGE A, Item 2 Exclusions:

Exclusion b. is deleted and replaced by the following:

b.   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   (1)   Assumed in a contract or agreement that is an "insured contract". However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

   (2)   That the insured would have in the absence of the contract or agreement.

All other terms and conditions of the policy apply.

104.143
Policy0337

143

Agency Code 16-0604-00                                    Policy Number 912316-36059424

55028 (1-88)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-OWNED AUTO LIABILITY ENDORSEMENT

### (Employer's Non-Ownership and Hired Auto Liability)

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE FORM).**

It is agreed the coverage for "bodily injury" and "property damage" liability provided under Coverage A is extended as follows:

## COVERAGE

### INSURING AGREEMENT

We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto" you do not own or which is not registered in your name which is used in your business.

### EXCLUSIONS

With respect to this endorsement, the exclusions which apply to Coverage A, other than exclusions a., d., e., f. and i. and the Nuclear Energy Liability Exclusion, are replaced by the following:

This coverage does not apply to:

1.  Liability assumed by the insured under any contract or agreement.

2.  "Property damage" to:

    a.  Property owned or being transported by, or rented or loaned to the insured; or
    b.  Property in the care, custody or control of the insured;

    other than property damage to a residence or a private garage by a private passenger automobile covered by this coverage.

**WHO IS INSURED** (Section II) is replaced by the following:

Each of the following is an insured with respect to this coverage:

1.  You;
2.  Any partner or executive officer of yours; and
3.  Any person using the "auto" and any person or organization legally responsible for the use of an "auto" not owned by such person or organization, provided the actual use is with your permission.

None of the following is an insured:

1.  Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment.

2.  Any person using the "auto" and any person other than you, legally responsible for its use with respect to an "auto" owned or registered in the name of:

    a.  Such person; or
    b.  Any partner or executive officer of yours or a member of his or her household; or
    c.  Any employee or agent of yours who is granted an operating allowance of any sort for the use of such "auto".

3.  Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate.

104.143
Policy0338

Page 1 of 2

**144**

Agency Code 16-0604-00                                    Policy Number 912316-36059424

4.  The owner or lessee (of whom you are a sublessee) of a hired "auto" or the owner of an "auto" you do not own or which is not registered in your name which is used in your business or any agent or employee of any such owner or lessee.

5.  Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**ADDITIONAL DEFINITIONS**

The following definitions apply to this coverage:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**LIMITS OF INSURANCE**

It is agreed with respect to the coverage provided by this endorsement:

SECTION III - LIMITS OF INSURANCE is replaced by the following:

**SECTION III — LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  insureds;
    b.  claims made or "suits" brought; or
    c.  persons or organizations making claims or bringing "suits".

2.  If the Limits of Insurance shown in the Declarations:

    a.  is shown only as an Each Occurrence Limit, the Each Occurrence Limit is:

        the most we will pay for; and
        applies to;

    the sum of damages under Coverage A for "bodily injury" and "property damage" arising out of any one "occurrence"; or

    b.  is shown in the Declarations as an Each Person Limit and an Each Occurrence Limit:

        the Each Person Limit is the most we will pay under Coverage A for "bodily injury" sustained by any one person; and

        the Each Occurrence Limit:

            is the most we will pay for; and
            applies separately to 1) and 2);
            1)  damages covered under Coverage A for "bodily injury"; and
            2)  damages covered under Coverage A for "property damage".

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

All other terms and conditions of the policy apply.

104-143
Policy0339

Agency Code 16-0604-00                    Policy Number 912316-36059424

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United State of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or

IL 00 21 11 85          Copyright, Insurance Services Office, Inc., 1983, 1984          Page 1 of 2

104.143
Policy0340

Agency Code 16-0604-00                                    Policy Number 912316-36059424

possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a)  Any "nuclear reactor;"

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

IL 00 21 11 85          Copyright, Insurance Services Office, Inc., 1983, 1984          Page 2 of 2

Agency Code 16-0604-00                    Policy Number 912316-36059424

IL 02 49 06 89

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SOUTH CAROLINA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETE OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs 2. and 3. of CANCELLATION Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

**B.** The following is added to the CANCELLATION Common Policy Condition:

**7.** CANCELLATION OF POLICIES IN EFFECT FOR 90 DAYS OR MORE

If this policy has been in effect for 90 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

**c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

**d.** Substantial breaches of contractual duties, conditions or warranties; or

**e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

Prior to cancellation for reasons permitted in this item e., we will notify the Commissioner, in writing, at least sixty days prior to such cancellation and the Commissioner will, within thirty days of such notification, approve or disapprove such action.

Any notice of cancellation will state the precise reason for cancellation.

**C.** The following is added and supersedes any provisions to the contrary.

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, at least 30 days before:

**a.** The expiration date of this policy, if the policy is written for a term of one year or less; or

**b.** An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO Commercial Risk Services, Inc., 1986, 198                    Page 1 of 2

104.143
Policy0342

148

Agency Code 16-0604-00                          Policy Number 912316-36059424

However, we will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Any notice of nonrenewal will state the precise reason for nonrenewal.

104.143
Policy0343

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO Commercial Risk Services, Inc., 1986, 1989

Page 1 of 2

Agency Code 16-0604-00                    Policy Number 912316-36059424

## COMMON POLICY CONDITIONS

IL 00 17 11 85

All Coverage Parts included in this policy are subject to the following conditions.

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by

endorsement issued by us and made a part of this policy.

**C. EXAMINATIONS OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:

Copyright, Insurance Services Office, 1982, 1983

104.143
.cy0344

Agency Code 16-0604-00

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, 1982, 1983

IC-143
Policy0345

AGENCY ℈℈℈℈℈℈℈℈℈    POLICY #############
                    !! ℈℈
#######################################
!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!
℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈

13271 (3-95)

#########

BOX 30660, LANSING, MICHIGAN 48909-8160  •  517/323-1200
AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY

!!!!!!!!!!℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈!!!!!!!!!!!
##########℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈
!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!
℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈℈!!
##############################

Thank you for allowing Auto-Owners to handle your insurance needs.

Auto-Owners Insurance Group is financially sound with sufficient reserves to be ranked among the leaders in the industry for financial security.  Our A++ (Superior) rating by the A.M. Best Company signifies that we have the financial strength to provide the insurance protection you need.

Feel free to contact your Auto-Owners agency with any questions you may have about your insurance needs.

Your agency's phone number is  !!!!!!!!!!!!!!.

Auto-Owners Insurance - The "No Problem" People®

⌐ *Serving Our Policyholders and Agents for More Than 85 Years* ⌐

104.143
Policy0346

TAILORED PROTECTION POLICY

CANCELLATION

# *Auto-Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD LANSING MI 48917-3968

POLICY NUMBER 912316 36059424 00 00

INSURED: HYPERION TOWERS HOA INC
         %PINNACLE REAL ESTTE MGMT
         4605 OLEANDER DR # D
         MYRTLE BEACH      SC 29577-5739

AGENCY:16-0604-00 UNIT: 46 PRODUCER:
WACCAMAW INSURANCE SERVICES INC
PO BOX 2410
MYRTLE BEACH      SC 29578-2410

POLICY TERM: 02-07-2000  TO  02-07-2001

CANCELLATION INVOICE

THIS POLICY IS CANCELED AS OF  12:01 A.M. ON 02-07-2000.

A CANCELLATION CREDIT OF $1,245.00 HAS BEEN
APPLIED TO YOUR BILLING ACCOUNT.  THIS
CREDIT MAY OR MAY NOT RESULT IN A PREMIUM
REFUND DEPENDING ON YOUR ACCOUNT BALANCE.

PLEASE CONTACT YOUR AGENT CONCERNING ANY
QUESTIONS.

I certify that this policy was assembled from
available records as a representation of
coverage that was in effect for the policy
period shown.

Date _____ 10-17-12 _____

55057 (7/87)

03-28-2000

104.143
Policy0347

153

DE 51-1 Exhibit A: Affidavit of Attorneys' Fees and Costs/Expenses

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY | ) | C/A NO: 4:12-CV-3423-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) | |
| Defendant. | ) | |

## Affidavit of Attorneys' Fees and Costs/Expenses

Personally appeared before me, Mary-Fran Ferry, an employee of Plaintiff Auto-Owners Insurance Company ("Auto-Owners"), who being duly sworn, says that:

1.  I have personal knowledge of the information herein, and I am authorized to make this affidavit on behalf of Auto-Owners.

2.  I am an employee of Auto-Owners, and my title is Senior Claims Representative.

3.  I am familiar with the allegations made by Auto-Owners in the subject civil action including, but not limited to, the claim for reimbursement for attorneys' fees and costs/expenses made against Defendant Travelers Casualty and Surety Company of America.

4.  I am familiar with Auto-Owners' Claim No. 72-1212-10, which is presently in litigation as Civil Action No. 11-CP-26-05465 pending in the Court of Commons Pleas, Fifteenth Judicial Circuit, in Horry County, SC.

5.  Auto-Owners issued insurance policies with commercial general liability coverage to

–1–

Hyperion Towers HOA, Inc., ("Hyperion Towers").

6.    Hyperion Towers is a named defendant in Civil Action No. 11-CP-26-05465.

7.    Pursuant to the insurance policies, Auto-Owners is providing a defense to Hyperion

    Towers.

8.    The defense has included the payment of attorneys' fees and costs to more than one law

    firm including, Aiken, Bridges, Nunn, Elliott, Tyler & Saleeby, P.A. of Florence, SC,

    Murphy & Grantland, P.A. of Columbia, SC, The Pearce Law Group, LLC of Myrtle

    Beach, SC and Wall Templeton & Haldrup, P.A. of Charleston, SC.

9.    Auto-Owners agreed to split the costs to defend Hyperion Towers with Scottsdale

    Insurance Company starting with Aiken, Bridges, Nunn, Elliott, Tyler & Saleeby, P.A.

10.   Auto-Owners and Scottsdale Insurance Company retained Murphy & Grantland, P.A. and

    The Pearce Law Group, LLC to defend the individual board members who were named

    as defendants originally in Civil Action No. 11-CP-26-05465.

11.   In and around October 2012, Aiken Bridges, Nunn, Elliott, Tyler & Saleeby, P.A.

    determined that the law firm had a conflict in defending Hyperion Towers, so Auto-

    Owners and Scottsdale Insurance Company employed Wall Templeton & Haldrup, P.A.

    to defend Hyperion Towers.

12.   In 2013, Plaintiffs in Civil Action No. 11-CP-26-05465 agreed to dismiss the individual

    board members as defendants, so the services of Murphy & Grantland, P.A. and The

    Pearce Law Group, LLC were no longer needed in Civil Action No. 11-CP-26-05465.

13.   Wall Templeton & Haldrup, P.A is currently the only defense counsel retained by Auto-

    Owners and is defending Hyperion Towers in Civil Action No. 11-CP-26-05465.

14.   As of the date of this affidavit, Auto-Owners has paid $240,701.22 in attorneys' fees,

–2–

$21,654.36 in costs (e.g., copying, court reporters) and $46,851.06 for experts in the

defense of either Hyperion Towers or the individual board members.

Print Name: Mary-Fran Ferry

Signature: _____

Title: Senior Claims Representative

Sworn to and subscribed before me
This _____ day of _____, 2014.

_____ (L.S.)
Notary public for _____
My Commission Expires: _____

–3–

Order Granting Summary Judgment

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | ) | Civil Action No.: 4:12-cv-3423-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Travelers Casualty and Surety | ) | |
| Company of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Auto-Owners Insurance Company ("Auto-Owners" or "Plaintiff") filed this declaratory judgment action on December 3, 2012, seeking a declaration that Defendant Travelers Casualty and Surety Company of America ("Travelers" or "Defendant") has a duty to defend in an underlying state court action captioned *John Schuler, et al. v. Hyperion Towers Homeowners Association, Inc., et al.*, 2011-CP-26-5465 (the "underlying state action"). *See* Compl., ECF No. 1 at 2. This matter is before the Court on Travelers' motion to dismiss, filed on October 31, 2013, and motion for summary judgment, filed on March 31, 2014. *See* Def.'s Mot. to Dismiss, ECF No. 34; Def.'s Mot. for Summ. J., ECF No. 50. Plaintiff filed a response to the motion to dismiss on November 18, 2013, *see* ECF No. 35, and filed a response to the motion for summary judgment on April 17, 2014, *see* ECF No. 51. Travelers filed a reply in support of its motion to dismiss, after receiving an extension, on December 17, 2013, *see* ECF No. 41, and filed a reply in support of its motion for summary judgment on April 28, 2014, *see* ECF No. 52. For the reasons stated below, the Court grants Travelers' motion for summary judgment.[1]

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The Court previously

## FACTUAL BACKGROUND

Despite the parties' best efforts to obfuscate the issue, the entire purpose of this lawsuit can be distilled down to Auto-Owners seeking an order requiring Travelers to assist in the defense of the underlying state action.   The plaintiffs in the underlying action owned condominiums in the Hyperion Towers Horizontal Property Regime, and brought suit against the Hyperion Towers Homeowners' Association ("HOA"), the Hyperion Towers Board of Directors, and the individual board members for breach of various duties.   Am. Compl., ECF No. 26 at ¶¶ 13, 15–18. Auto-Owners insured the Hyperion Towers HOA pursuant to a Commercial General Liability Policy from October 15, 1991 through February 7, 2000.[2]   *See* ECF No. 51 at 2; Auto-Owners Policy, ECF No. 26-4.   Travelers also insured the Hyperion Towers HOA pursuant to a Non-Profit Management and Organization Liability Insurance Policy from February 7, 2007 through February 7, 2010.   *See* ECF No. 50 at 3; Travelers Policy, ECF No. 26-3.   Auto-Owners asserts that it is currently providing the Hyperion Towers HOA, the Hyperion Towers Board of Directors, and the individual defendants with a defense in the underlying action.   *See* ECF No. 26 at ¶ 21.   Auto-Owners claims that Travelers acknowledges a duty to defend the underlying action, yet has refused to do so.   *Id.* at ¶ 23. Travelers, on the other hand, argues that Auto-Owners cannot seek to compel it to defend the

---

scheduled a hearing, but it was cancelled at the request of one or both attorneys.   Upon review of the various briefings, the Court determined that a hearing was not necessary.
[2]  In its response in opposition to Travelers' motion for summary judgment, Auto-Owners notes that it "wishe[d] to correct the policy period noted by Travelers and stated by Auto-Owners in its Amended Complaint."   *See* ECF No. 51 at 2.   Auto-Owners asserts that the policy period ran from October 15, 1991 to February 7, 2000, rather than the February 7, 1998 through February 7, 2001 time period stated in the Amended Complaint.   *See id.*; Am. Compl, ECF No. 26 at ¶ 10.   Travelers did not object to this correction in its reply to Auto-Owners' response.   In any event, the Court notes that its decision would remain the same regardless of whether the policy was first effective October 15, 1991 or February 7, 1998.

2

underlying suit, and that, even if Auto-Owners could seek such relief, any duty Travelers may owe its insured is excess to that of Auto-Owners. *See* ECF No. 50 at 6; ECF No. 52 at 1–2.

Auto-Owners brought the present action seeking a declaration that Travelers has a duty to defend the underlying action. Travelers argues that this relief cannot be sought by Auto-Owners, and, even assuming Auto-Owners could seek such a declaration, it would have no duty to defend because Travelers' coverage is excess to Auto-Owners' coverage. Therefore, Auto-Owners also seeks a declaration that the Travelers policy is not "excess" to the Auto-Owners policy. Finally, Auto-Owners asserts equitable causes of action for contribution, unjust enrichment, and equitable subrogation, claiming that it would be unfair for the Court to allow Travelers to continue refusing to defend the underlying action.

### SUMMARY JUDGMENT STANDARD

Travelers' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and motion for summary judgment are both pending before the Court. Because the parties have presented matters outside the pleadings and the Court has considered this evidence, the Court will proceed under the Rule 56 standard. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond

3

to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In this case, the moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id.*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary

4

standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

## DISCUSSION

### I.    Introduction

The parties devote much of the briefing to arguing over whether the "other insurance" clauses of the respective insurance policies should apply, and whether or not application of these clauses establishes one of the policies as "excess" coverage.[3]  As the Supreme Court of South Carolina has noted, these clauses have been described as "'the catacombs of insurance policy English, a dimly lit underworld where many have lost their way.'"  *S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.*,

---

[3] In the Amended Complaint, Auto-Owners alleges that "Travelers acknowledges a duty to defend in the [underlying] action, but has refused to do so, contending that any of its obligations under the Travelers policy are excess to that of the Auto-Owners Policies."  ECF No. 26 at ¶ 23.  Thus, part of the relief sought by Auto-Owners is a declaration that "the Travelers Policy is not excess to that of Auto-Owners."  *Id.* at ¶ 31.  Travelers devotes a significant portion of its briefing to its argument that, applying the "other insurance" clauses of the two policies, it is clear that the Travelers policy is excess.  Thus, Travelers argues, even if Auto-Owners could seek a declaration regarding Travelers' duty to defend, any duty owed would only be excess to that of Auto-Owners.  *See* ECF No. 50 at 6–10.

As Auto-Owners correctly explained, however, under South Carolina law, "other insurance" clauses only apply when coverage is concurrent.  *See S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200, 202 (S.C. 1997) ("Other insurance clauses are intended to apportion an insured loss between or among insurers where two or more policies offer coverage of the *same risk* and *same interest* for the benefit of the *same insured* for the *same period.*" (emphasis added)); *cf. St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 241 (4th Cir. 1990) (applying North Carolina law, but noting that other insurance clauses "apply only when the coverage is concurrent," and "[w]here . . . the policies periods did not overlap at all, such clauses are not applicable").  It is questionable whether these policies insured the same risk, but they clearly did not cover the same time period.  The Auto-Owners policy was effective October 15, 1991 through February 7, 2000.  *See* ECF No. 51 at 2; Auto-Owners Policy, ECF No. 26-4.  The Travelers policy was effective from February 7, 2007 through February 7, 2010.  *See* ECF No. 50 at 3; Travelers Policy, ECF No. 26-3.  The Court notes that Travelers reliance on the other insurance argument seems misplaced in light of the South Carolina case law on this issue.  However, analysis of the other insurance clauses is not necessary to the resolution of this matter.

5

489 S.E.2d 200, 202 (S.C. 1997) (quoting *Ins. Co. of N. Am. v. Home & Auto Ins. Co.*, 628 N.E.2d 643, 644 (Ill. Ct. App. 1993)).   However, the Court is somewhat perplexed as to why the parties did not devote the most significant portions of their briefing to the issue of whether the relief sought by Auto-Owners can even be granted by this Court under existing South Carolina law.   As more fully set forth below, the Court finds that it cannot grant the relief sought by Auto-Owners, namely, a declaration requiring Travelers to join in the defense of the underlying suit.   Accordingly, Travelers' motion for summary judgment must be granted.

**II.     Standing Under the Declaratory Judgment Act**

A threshold argument made by Travelers is whether Auto-Owners has standing to bring this action under the Declaratory Judgment Act.   Although it is articulated as a "standing" issue, Travelers' argument in essence relates to whether the Court has the ability to award Auto-Owners its requested relief.   Travelers asserts that Auto-Owners does not have "standing" to seek a declaration with regard to Travelers' duty, if any, to defend the Hyperion Towers HOA, the Hyperion Towers Board of Directors, and/or the individual board members.   As Auto-Owners correctly notes, however, jurisdictional standing under the declaratory judgment act is a different question than what Travelers is arguing, which goes more towards the merits of Auto-Owners' declaratory judgment claim.   This argument is discussed in Part III below.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."   28 U.S.C. § 2201.   As the Supreme Court of the United States has explained, "[b]asically the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

6

reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Here there is a substantial controversy. Auto-Owners avers it has spent several hundred thousand dollars in defending the underlying lawsuit. *See* Affidavit, ECF No. 51-1 at ¶ 14. If the Court were to find Travelers also has a duty to defend the underlying lawsuit, it would result in considerable financial ramifications to both Auto-Owners and Travelers. The parties also have adverse legal interests, as they are diametrically opposed on the issue of whether Travelers must assist in the defense. Finally, the underlying suit is ongoing, meaning Auto-Owners would certainly prefer a resolution as soon as possible. Therefore, the issue is of sufficient immediacy to warrant issuance of a declaratory judgment.

Accordingly, the Court finds that Auto-Owners has standing under the Declaratory Judgment Act to bring this question before the Court. This does not end the inquiry though, because even if the Court can hear the action, Plaintiff must still state a claim upon which relief may be granted.

### III.   Declaratory Judgment Claim

Although Travelers frames it as a "standing" argument with regard to the Declaratory Judgment Act, the question of whether Auto-Owners can seek a declaration regarding Travelers' duty to defend is more of legal question of whether Auto-Owners states a claim upon which the Court can grant relief. As the parties have presented evidence in addition to the pleadings, and also filed a motion for summary judgment and response in opposition, the Court will examine the merits to determine whether Auto-Owners has established a genuine issue of material fact with regard to whether, under the circumstances, the Court can order Travelers to defend the underlying suit.

"An insurer's obligation under a policy of insurance is defined by the terms of the policy itself, and cannot be enlarged by judicial construction." *MGC Mgmt. of Charleston, Inc. v. Kinghorn*

7

*Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999) (citing *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524 (S.C. Ct. App. 1996)).   Courts "must enforce, not write, contracts of insurance," and "must give the policy language its plain, ordinary, and popular meaning."   *Id.* (citing *Fritz-Pontiac-Cadillac-Buick v. Goforth*, 440 S.E.2d 367 (S.C. 1994)).   "[A]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer."   *Id.* (citing *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912 (S.C. 1995)).   "However, if the intention of the parties is clear, courts should not torture the meaning of policy language to extend or defeat coverage that was never intended by the parties."   *Id.* (citing *Diamond State*, 456 S.E.2d 912).   A party seeking coverage under a liability policy must be an insured under the contract of insurance.   *Shelby Mut. Ins. Co. v. Askins*, 413 S.E.2d 855, 859 (S.C. Ct. App. 1992).   Moreover, an insurance policy may contain exclusions, tailored to the business of the particular insured, designed to limit the insurer's risk exposure from hazards peculiar to that business.   *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999) (quoting *Couch on Insurance* 3d, § 130:14 (1997)).   "Although exclusions in an insurance policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition."   *Id.* (citations omitted).

"[U]nder South Carolina law, '[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the [underlying] complaint.'"   *Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC*, 763 F. Supp. 2d 769, 776 (D.S.C. 2011) (quoting *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009)).   In South Carolina, the duty to defend is broader than the duty to indemnify.   *Ross*

8

*Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 457 (D.S.C. 2011). "If the underlying complaint creates a *possibility* of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville*, 677 S.E.2d at 578 (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins.* Co, 265 S.E.2d 38 (S.C. 1980)) (emphasis added). As this Court has previously explained, this means that "the duty to defend is triggered where the underlying complaint includes *any allegation* that raises the possibility of coverage." *Auto-Owners Ins. Co. v. Newsome*, No. 4:12-cv-00447-RBH, 2013 WL 3148334, at *4 (D.S.C. June 19, 2013). An insurer whose duty to defend has been triggered by a lawsuit against the insured "is not justified in refusing to defend the entire case." *Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768, 773–74 (S.C. 1997); *see also Employers Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53, 59 (4th Cir. 1952); *Cincinnati Ins. Co. v. Crossmann Cmtys. of N.C, Inc.*, No. 4:09-CV-1379-RBH, 2013 WL 1282017, at *11 (D.S.C. Mar. 27, 2013) ("South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy.").

Travelers asserts that the Court cannot declare, on behalf of Auto-Owners, that Travelers has a duty to defend under South Carolina law. The Court notes that "[t]he duty to defend is personal to each insurer." *Sloan Constr. Co. v. Cent. Nat'l Life Ins. Co. of Omaha*, 236 S.E.2d 818, 820 (S.C. 1977). In *Sloan*, the Supreme Court of South Carolina held that the duty to defend "is several and the insurer is not entitled to divide the duty nor require contribution from another absent a specific contractual right." *Id.*; *see also Shelby Mut. Ins. Co. v. Askins*, 413 S.E.2d 855, 859 (S.C. Ct. App. 1992) ("Fundamental to the concept of duty to defend is the requirement that the party seeking the defense must be an insured under a contract of insurance."). The *Sloan* court held that "where two

9

companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend." *Id.* The court explained that, although one insurer met its contractual duty to defend and the other did not, "[t]he insured was not damaged because it was afforded a defense." *Id.* at 821. Moreover, the insurer who defended "was not damaged by [the other's] refusal to defend since it was a stranger to the contract" between the other insurer and its insured. *Id.* Finally, the Court noted that the insurance company who defended "was doing no more than it was obligated to do under its insurance contract." *Id.* Under general principles of contract law, the *Sloan* court explained, no right to recovery exists in such a situation. *Id.*

As Auto-Owners correctly notes, it is true that the *Sloan* court was dealing with a situation where the two insurers insured an identical risk and one sought contribution from another for defense costs. The Supreme Court of South Carolina has not addressed whether an insurance company may seek to require another insurer to defend its insured up front via a declaratory judgment (rather than seeking contribution), nor has it addressed whether the same principles apply where different risks are insured. Nevertheless, "[e]ven in the absence of clear state authority on an issue, a federal court has the duty to decide, not avoid, the question presented." *Holt v. State Farm Mut. Auto. Ins. Co.*, 870 F. Supp. 658, 661 (D.S.C. 1994). The parties have not asked this Court to certify the question to the Supreme Court of South Carolina. Accordingly, "[t]his court is required to forecast the rule the South Carolina Supreme Court is likely to adopt in the future keeping in mind all that is known about that court." *Id.* (citing *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981)). "The best

10

evidence of how a state appellate court will likely determine a novel issue is that court's relevant holdings." *Id.*

The undersigned previously addressed *Sloan* in *Assurance Co. of Am. v. Penn-America Ins. Co.*, No. 4:11-cv-03425-RBH, 2013 WL 1282141 (D.S.C. Mar. 27, 2013). Like *Sloan*, that case also concerned a situation where one insurer sought contribution from another for defense costs expended in defending a shared insured. The undersigned held that one insurance company did not have the right to seek contribution from another where it was "not a party to the insurance contract with [the other insurer] and is without an assignment from the insured." *See Assurance*, 2013 WL 1282141, at *2. As the Court explained, "liability for contribution, indemnity, unjust enrichment and breach of contract each arise out of a contractual or special relationship that simply does not exist in this case." *Id.*

The Court finds that, based on the holding in *Sloan*, the Supreme Court of South Carolina would likely find that, under the facts of this case, Auto-Owners may not require Travelers to defend their shared insured. As previously noted, *Sloan* did involve a different set of facts, as that case sought contribution rather than a declaratory judgment, and the insurers insured the same risk.[4] However, even despite these factual differences, the Court finds that the general principles set forth in *Sloan* dictate that the Supreme Court of South Carolina would find the present action to be inappropriate. Particularly relevant is the language from *Sloan* explaining that the insurer seeking to compel the other insurer to defend was not damaged: "since it was a stranger to the contract" between

---

[4] Auto-Owners asserts that these two policies insure different risks, arguing that its commercial general liability policy insured "an occurrence of property damage that takes place during the policy period," while the Travelers policy insured "'wrongful acts' that cause damages, including 'economic loss,' but not 'property damage.'" *See* ECF No. 51-2 at 8 (citing *Pulliam v. Travelers Indem. Co.*, 743 S.E.2d 117, 121 (S.C. Ct. App. 2013). These policies do appear to insure different risks.

11

the other company and its insured.  The Court finds that this language is equally applicable to a situation where the insurers insure different risks, and where a declaratory judgment is sought rather than contribution.  Moreover, this Court's rationale in *Assurance* is also applicable here: the claims asserted by Auto-Owners arise out of a contractual or special relationship that does not exist between Auto-Owners and Travelers in this case.  The opinion of the Court of Appeals of South Carolina in *Askins* also supports this conclusion.  *See Askins*, 413 S.E.2d at 859 ("Fundamental to the concept of duty to defend is the requirement that *the party seeking the defense must be an insured under a contract of insurance*." (emphasis added)).

Auto-Owners' declaratory judgment claim fails as a matter of law, as they are not a party to the insurance contract with Travelers.  Accordingly, Travelers is entitled to summary judgment with regard to Auto-Owners' declaratory judgment claim.

**IV.    Contribution, Unjust Enrichment, and Equitable Subrogation Claims**

Auto-Owners also asserted claims for contribution, unjust enrichment, and equitable subrogation.  Travelers moved for summary judgment on each of these claims, asserting that *Sloan* establishes that Auto-Owners may not seek contribution, and the unjust enrichment and equitable subrogation claims are simply attempts at cleverly pleading around *Sloan*.

As previously noted, the rule in *Sloan* clearly states that: "where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend."  *Sloan Constr. Co. v. Cent. Nat'l Life Ins. Co. of Omaha*, 236 S.E.2d 818, 820 (S.C. 1977).  Auto-Owners argues that *Sloan* is distinguishable because the policies in this case do not insure the same risks and do not cover the same policy period.

12

*See* ECF No. 51 at 14–15.   Auto-Owners also cites to a litany of cases from around the country which support granting equitable contribution in favor of one insurer against another for defense costs.   *See id.* at 16–17.

The Court notes, again, that where South Carolina law is unsettled, it "is required to forecast the rule the South Carolina Supreme Court is likely to adopt in the future keeping in mind all that is known about that court."   *Holt v. State Farm Mut. Auto. Ins. Co.*, 870 F. Supp. 658, 661 (D.S.C. 1994) (citing *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981)).   As previously stated, "[t]he best evidence of how a state appellate court will likely determine a novel issue is that court's relevant holdings."   *Id.*   Yet again, the Court notes that while the facts of *Sloan* differed from the present case, the broad language used by the Supreme Court of South Carolina indicates that it would not allow Auto-Owners to seek contribution in this case.   In *Sloan*, the Supreme Court explicitly held that one insurer is not entitled to require contribution from another absent a specific contractual right. *Sloan*, 236 S.E.2d at 820.   Although the policies in *Sloan* insured an "identical risk" the Court gave no indication that this principle would be any less valid in other contexts.   Accordingly, the Court finds that, based on *Sloan*, Auto-Owners may not seek contribution from Travelers for defense costs.

The Court also agrees that Auto-Owners' claims for equitable subrogation and unjust enrichment are just attempts at pleading around the *Sloan* rule.   For example, the unjust enrichment claim asserts that Auto-Owners conferred a benefit on Travelers by paying the entire cost of defense, and permitting Travelers to retain this benefit would reward its failure to recognize its contractual obligation.   *See* ECF No. 26 at ¶¶ 41, 43.   Moreover, the equitable subrogation claim asserts that, by paying for the cost of defense, Auto-Owners has paid a debt owed by Travelers, and equity supports making Auto-Owners secondarily liable.   *See id.* at ¶¶ 46–48.   Finally, in the "WHEREFORE"

13

paragraph explaining the relief sought, Auto-Owners notes that its equitable claims request that the court enter a judgment "requiring Travelers to pay its equitable share of the sums paid by Auto-Owners." *See id.* at 10. The Court agrees with Travelers that these causes of action are simply attempts to plead contribution by another name. At the heart of all of Auto-Owners' equitable claims is a desire to have Travelers pay for part of the defense costs.

In any event, the Court finds that the unjust enrichment claim fails even if it were not an attempt to plead around contribution. Auto-Owners has simply done what was required of it pursuant to its contract with its insured. If the duty to defend is triggered, it requires defense of the entire suit. *See Cincinnati Ins. Co. v. Crossmann Cmtys. of N.C, Inc.*, No. 4:09-CV-1379-RBH, 2013 WL 1282017, at *11 (D.S.C. Mar. 27, 2013) ("South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy."). Auto-Owners has not conferred any benefit on Travelers, as it is simply complying with South Carolina law and the terms of its contract with its insured. Auto-Owners has incurred no harm due to Travelers' refusal because it is obligated to provide a defense regardless of Travelers' actions. *See Transcon. Ins. Co. v. MAJ Enters., Inc.*, No. 2:05-2594, 2005 WL 3465573, at *3 (D.S.C. Dec. 19, 2005).

The Court also finds that the equitable subrogation claim would fail even if it were not simply an attempt to plead around contribution. "The elements of the doctrine of equitable subrogation are (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity." *Shumpert v. Time Ins. Co.*, 496 S.E.2d 653, 656 (S.C. Ct. App. 1998) (citing *United*

14

*Carolina Bank v. Caroprop, Ltd.*, 446 S.E.2d 415 (S.C. 1994)).   The Court notes that Auto-Owners has not shown that it has paid a debt owed by Travelers.   In defending the underlying action, Auto-Owners has simply complied with the terms of its contract under South Carolina law. Moreover, Auto-Owners has also failed to establish that it was secondarily liable for a debt owed by Travelers.   Auto-Owners has provided no evidence, nor has it argued, that its duty is secondary to Travelers' duty.

Accordingly, based on the above, the Court finds that summary judgment is also appropriate on Auto-Owners' equitable claims for contribution, unjust enrichment, and equitable subrogation.

### CONCLUSION

The Court has thoroughly reviewed the entire record, including Defendant's motion to dismiss and motion for summary judgment, Plaintiff's responses to both motions, Defendant's replies in support of both motions, and the applicable law.   For the reasons stated above, the Court grants Travelers' motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.   Accordingly, Defendant's motion to dismiss is **MOOT**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
July 22, 2014

15

173

Summary Judgment

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the

### District of South Carolina

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | ) | |
| | ) | 4:12-cv-003423-RBH |
| Plaintiff(s), | ) | |
| | ) | |
| vs | ) | |
| | ) | |
| Travelers Casualty and Surety Company of America, | ) | |
| | ) | |
| Defendant(s). | ) | |

### SUMMARY JUDGMENT IN A CIVIL ACTION

The court has ordered that  *(check one)*:

❏ the plaintiff *(name)*_____ recover from the defendant *(name)*_____ the amount of _____dollars ($_____), which includes prejudgment interest at the rate of _____%, plus postjudgment interest at the date of _____%,  along with costs.

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)*_____.

✔ other: Summary Judgment is entered for Defendant Travelers Casualty and Surety Company of America and this action is hereby dismissed with prejudice.

This action was  *(check one)*:
❏ tried by a jury with Judge_____presiding, and the jury has rendered a verdict.

❏ tried by Judge_____without a jury and the above decision was reached, rendered a verdict.

✔ decided by the Honorable R. Bryan Harwell, United States District Judge, who grants  Defendant's Motion for Summary Judgment.

s/Heather Ciccolella
Robin L. Blume
CLERK OF COURT

By:s/Heather Ciccolella
Deputy Clerk

July 22, 2014

175

Notice of Appeal

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

AUTO-OWNERS INSURANCE COMPANY,

Plaintiff,

vs.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

Defendant.

Civil Action No.: 4:12-cv-3423-RBH

NOTICE OF APPEAL

Notice is hereby given that Plaintiff Auto-Owners Insurance Company in the above named case hereby appeals to the United States Court of Appeals for the Fourth Circuit from the Summary Judgment and Order granting Motion for Summary judgment (Finding as moot Motion to Dismiss) in favor of Defendant Travelers Casualty and Surety Company of America, by the Honorable R. Bryan Harwell, entered in this action on the 22nd day of July, 2014 (ECF No. 63 and 64).

(*Signature on Next Page*)

–1–

*Notice of Appeal*
*Civil Action No.: 4:12-cv-3423-RBH*


                         RESPECTFULLY SUBMITTED,

                         s/ John L. McCants
                         John L. McCants, Esq.
                         District Court Bar No. 4870
                         Rogers Lewis Jackson Mann & Quinn, LLC
                         P.O. Box 11803 (29211)
                         1330 Lady Street, Suite 400
                         Columbia, SC 29201
                         Tele: 803-978-2834
                         Fax: 803-252-3653
                         jmccants@rogerslewis.com
                         Attorney for Plaintiff Auto-Owners Insurance Co.


August 15, 2014


                              –2–

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

AUTO-OWNERS INSURANCE COMPANY,

Plaintiff,                               Civil Action No.: 4:12-cv-3423-RBH

vs.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

Defendant.

Certificate of Service

I certify that on August 15, 2014 the foregoing document (Notice of Appeal) was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jeffrey James Wiseman, Esq.
Young Clement Rivers
PO Box 993
Charleston, SC 29402
843-720-5488
Fax: 843-579-1393
Email: jwiseman@ycrlaw.com
Attorney for Defendant Travelers Casualty and Surety Company of America
*Via CM/ECF system*

Stephen L. Brown, Esq.
Young Clement Rivers
PO Box 993
Charleston, SC 29402
843-577-4000
Fax: 843-579-1351
Email: sbrown@ycrlaw.com
Attorney for Defendant Travelers Casualty and Surety Company of America -- *Via CM/ECF system*

–3–

*Certificate of Service - Notice of Appeal*
*Civil Action No.: 4:12-cv-3423-RBH*

                    s/ John L. McCants
                    John L. McCants, Esq.
                    District Court Bar No. 4870
                    Rogers Lewis Jackson Mann & Quinn, LLC
                    P.O. Box 11803 (29211)
                    1330 Lady Street, Suite 400
                    Columbia, SC 29201
                    Tele: 803- 978-2834
                    Fax: 803-252-3653
                    jmccants@rogerslewis.com
                    Attorney for Plaintiff Auto-Owners Insurance Co.


August 15, 2014

## <u>CERTIFICATE OF SERVICE</u>

I certify that on **September 26, 2014,** the foregoing document (**Joint Appendix**) was served on all parties and their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses below:

Jeffrey J. Wiseman, Esq.
Young Clement Rivers, LLP
PO Box 993
Charleston, SC 29402
Tele: 803-720-5488
Fax: 843-579-1369
jwiseman@ycrlaw.com
Attorney for Appellee
*Via CM/ECF*

Stephen L. Brown, Esq.
Young Clement Rivers, LLP
PO Box 993
Charleston, SC 29402
Tele: 803-720-5488
Fax: 843-579-1369
sbrown@ycrlaw.com
Attorney for Appellee
*Via CM/ECF*

Russell G. Hines, Esq.
Young Clement Rivers, LLP
PO Box 993
Charleston, SC 29402
Tele: 803-720-5488
Fax: 843-579-1369
rhines@ycrlaw.com
Attorney for Appellee
*Via CM/ECF*

<u>s/ John L. McCants</u>
John L. McCants